UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 2 0 2002

Michael N. Milby
Clerk of Court

IN RE:
CHARLES B. FELDMAN D/B/A            CASE NO. B-02-073
CHARLES FELDMAN INVESTMENTS

## TRUSTEE'S MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM

Comes now, Michael Boudloche ("Trustee") and files this Motion to Dismiss for Failure

to State a Claim and would say as follows:

### Jurisdiction

1.      This Court has jurisdiction over this Motion because Kaufman's Motion is in a matter

appealed from an adverse bankruptcy order.  28 U.S.C. § 158 and Rule 8011 FRBP.

### Parties

2.      The Movant is Michael Boudloche, Trustee and the Respondent is Colin K. Kaufman.

### Basis

3.      Kaufman's Motion should be dismissed pursuant to Rule 12(b) (6) for the reasons set forth

in the following paragraphs.

4.      On December 13, 2002, Appellant Kaufman ("Kaufman') filed Appellant's Motion for

the Court to Prevent Mooting of the Appeal.  In this Motion Kaufman has failed to state a claim

upon which relief can be granted. Kaufman's Motion, while he attempts to claim otherwise, is a

long-winded motion seeking a stay from the District Court of matters now properly pending

before the Bankruptcy Court.  In the Bankruptcy Court the Trustee has commenced collection

proceedings and discovery in an effort to identify assets on which he may satisfy his $214,000 judgment against Kaufman for improperly paying himself fees he was not entitled to. Kaufman has not posted a supercedes bond to stay collection on this Judgment. In the words of the 5th Circuit, "the consequences of failing to obtain a stay are that the prevailing party may treat the judgment of the district court as final.... Thus, in the absence of a stay, action of a character which cannot be reversed by the court of appeals may be taken in reliance on the lower court's decree." *American Grain Assoc. v. Lee-Vac, Ltd.,* 630 F.2d 245, 247 (5th Cir. 1980). In this matter Kaufman has additionally failed to file a motion seeking a stay with the Bankruptcy Court as required by Rule 8005 FRBP. This Rule provides, in part:

> "A motion for stay of the judgment, order or decree of a bankruptcy judge,..., or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.... **A motion for such relief...may be made to the district court..., but the motion shall show why the relief...was not obtained from the bankruptcy judge.**" (Emphasis added).

5.      Inasmuch as Kaufman, in addition to failing to file a supercedes bond, has also failed to apply to the bankruptcy judge for a stay, he has failed to make and can not make the necessary showing required by Rule 8005 for the district court to grant him a stay. *In re Glenn Duncan,* 107 B.R. 758, 759 (D.Ct, WD OK, 1988), in accord, *In re Zahn Farms,* 206 B.R. 643 (B.A.P 2d. Cir. 1997). By failing to comply with the procedural requirements of Rule 8005 a motion for stay pending appeal is to be denied. *In re Babcock & Wilcox,* 2000 U.S. Dist. Lexis 6448 (D.Ct. ED, LA, 2000.).

6.      Under Rule 9019, FRBP, a bankruptcy trustee is required to obtain bankruptcy court approval of any settlements. A settlement which has not been approved by the bankruptcy court

2

is unenforceable against the bankruptcy estate. *In re Rothwell,* 159 B.R. 374 (Bankr. D. Mass. 1993). In accordance with Rule 9019, the Trustee has filed a motion to approve settlement of Adversary No.01-2090-C, against the Debtor and others. This Motion to approve the settlement was filed on October 31, 2002, and is presently pending before the Bankruptcy Court. Kaufman's Motion, while somewhat long-winded about it, is requesting that the District Court intervene in, stay or otherwise decide the merits of this settlement proceeding. To do so would be an invasion of the authority and jurisdiction of the Bankruptcy Court granted under the *Standing Order of Reference*, whereby all bankruptcy matters are referred to the Bankruptcy Courts.

7.     Kaufman's Motion crosses way over the line of propriety.   Kaufman's personal attacks in his Motion on the integrity and motivation of the Bankruptcy Judge, the Trustee, the Trustee's wife and the undersigned far exceed the boundaries for proper presentation of a zealous and effective advocacy. Kaufman's many false accusations, innuendoes and simile are, to use the words of the Honorable Wesley Steen, "dissembling, inflammatory, sophomoric, and generally inappropriate". The personal attacks by Kaufman on Cindy Boudloche are doubly troubling as she is neither involved in this Appeal or the underlying Bankruptcy Case. Mr. Kaufman obviously has no shame.

8.     The quote of Judge Steen is taken from his *Findings of Fact and Conclusion of Law Supporting Dismissal of Compliant as to Falcon Bank and Del Rio Bank,* entered March 25, 1999 (the "*Findings of Fact*") in the Bankruptcy Case No. 95-22388-L2-7, *In re Jesus M. Cantu,* United States Bankruptcy Court, Southern District of Texas, Laredo Division. This Court is requested to take judicial notice of these *Findings of Fact*, a true and correct copy of which is

3

attached hereto as Exhibit "A", and incorporated herein by reference.  In these *Findings of Fact,*

Judge Steen admonished and warned Kaufman regarding his (i) respect for the process and for

opposing counsel, and (ii) frivolous claims.  Apparently, this admonishment did nothing to

preclude or deter Kaufman in the way that he handles matters in Federal Court-or in conducting

himself with any degree of civility. As in the Case before Judge Steen, Kaufman Motion here is

frivolous.

WHEREFORE, Trustee prays that this court dismiss Plaintiff's Complaint in this adversary

proceeding for failure to state a claim upon which relief can be granted.


Respectfully submitted,
Law Office of Michael B. Schmidt


Michael B. Schmidt
712 American Bank Plaza
Corpus Christi, Texas 78475
Office: 361/884-9949
Fax:    361/884-6000
TBN: 17775200
FBN: 10260
ATTORNEYS FOR TRUSTEE

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing legal document was mailed on this 19th day of December, 2002 to the following persons:

Mike Boudloche
1508 American Bank Plaza
Corpus Christi, TX 78475

Matthew A. Rosenstein
420 American Bank Plaza
Corpus Christi, TX 78475

Richard Grant
3102 Oak Lawn #700
Dallas, TX 75219

Ron Simank
Schauer & Simank
615 N. Upper Broadway, Ste. 2000
Corpus Christi, TX 78476

Colin Kaufman
P. O. Box 1662
Corpus Christi, TX 78403

James P. Moon
1660 N. Hampton Rd., Ste. 202
DeSoto, TX 75115

_____
Michael B. Schmidt

## CERTIFICATE OF CONFERENCE

I do hereby certify that I confered with opposing counsel, by fax letter, but was unable to resolve the dispute which is the subject of this motion, so this motion is opposed.

_____
Michael B. Schmidt

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN RE:
CHARLES B. FELDMAN D/B/A                    CASE NO. B-02-073
CHARLES FELDMAN INVESTMENTS

## **ORDER DISMISSING MOTION**

Came on to be heard the Trustee's Motion to Dismiss for Failure to state a Claim, and the Court having read the pleadings, heard the evidence and argument of counsel is of the opinion that such Motion should be granted, the Court is of the opinion that the relief requested is necessary and proper.  THEREFORE,

IT IS ORDERED that the Kaufman's Motion for the Court to Prevent Mooting of the Appeal is hereby DISMISSED for failure to state a claim on which relief can be granted.

It is so ORDERED.

SIGNED this _____ day of _____, 200_____.


_____
Hon. Hilda Tagle
United States District Judge

United States Bankruptcy Court
Southern District of Texas
ENTERED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

MAR 2 5 1999

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| IN RE: | § | |
| JESUS M. CANTU d/b/a CONTINENTAL | § | CASE NO. 95-22388-L2-7 |
| CHARTER BANK & TRUST, LTD. d/b/a | § | CASE NO. 95-22389-L2-7 |
| FIDELITY & TRUST, S.A. and d/b/a | § | CASE NO. 95-22390-L2-7 |
| FIDELITY & TRUST, Ltd., | § | |
| Debtors | § | |
| | § | |
| | § | RECEIVED |
| | § | |
| | § | MAR 29 |
| ANTHONY JUAREZ, Trustee | § | P+O |
| Plaintiff, | § | 35d 001 |
| | § | |
| vs. | § | ADVERSARY NO. 97-2146 |
| | § | |
| REGINALDO RAMON SANCHEZ | § | |
| JESUS M. CANTU | § | |
| DEL RIO BANK AND TRUST COMPANY, | § | |
| Debtors. | § | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING
DISMISSAL OF COMPLAINT AS TO FALCON BANK AND DEL RIO BANK

        The issue presented in these motions is whether a chapter 7 bankruptcy trustee may pursue civil RICO and related claims against two banks when (i) the bankruptcy Debtors (Plaintiffs) were the perpetrators of the alleged illegal activity, (ii) over four years have elapsed since the bankruptcy cases were filed and two years have elapsed since this adversary proceeding was filed without any material progress in prosecution of the case by the Trustee, (iii) the Trustee has no information or indication that the banks violated any law or duty to the bankruptcy estate, and (iv) the Trustee has no right to bring this action other than the fact that creditors of the estate were allegedly injured by the actions of the bankruptcy Debtors.  For reasons set forth in more detail below, the Court concludes that the Trustee's complaint against the banks fails to state a claim on which relief can be granted.

Summary

        On September 19, 1995, three involuntary chapter 7 bankruptcy petitions were filed against Jesus Cantu, individually and in assumed names under which he allegedly operated.  The cases were consolidated and on October 31, 1995, Anthony Juarez ("Trustee") was appointed as the bankruptcy

F:\DRAFTS\972146 Opinion Dismissing Case.wpd
990325.1452
Page 1

44


EXHIBIT "1"

trustee of all three bankruptcy estates. For purposes of the pending motions in this adversary proceeding, it is undisputed that Cantu was operating a Ponzi scheme in which he obtained "deposits" from Mexican citizens. Cantu utilized assumed names which were deceptively similar to bank names: Continental Charter Bk. & Trust, Ltd., Fidelity & Trust, S.A., and Fidelity & Trust, Ltd. The Trustee informs the Court that Cantu ("Debtor") is now incarcerated in a federal institution, convicted of federal crimes related to these activities.

In 1997, two years after his appointment, the Trustee filed this adversary proceeding against the Debtor and his alleged accomplice Reginaldo Sanchez, who is allegedly a citizen and resident of Mexico. For over 10 months, there was no apparent progress in the prosecution of this case.

In October 1997, the undersigned judge was assigned responsibility for bankruptcy cases in the Laredo division of this Court. Soon thereafter, the Court undertook routine review of all cases in which there had not been significant progress in prosecution of the cases. On June 11, 1998, the Court issued an order to show cause why this adversary proceeding should not be dismissed for want of prosecution. A flurry of activity followed.

On July 1, 1998, the Trustee filed a First Supplemental Complaint and Application for Writs of Sequestration, Attachment, and Garnishment. After numerous revisions to meet the statutory requirements, the Court issued orders for attachment of funds belonging to the Debtors or Sanchez that might be on deposit in various banks. The attachment orders were not requested until three years after the filing of the bankruptcy case, however, and therefore it is not a surprise that no material amount of funds was still on deposit in the accounts.

In addition to seeking attachment of funds belonging to the Debtor and Sanchez, the First Supplemental Complaint added four banks as additional defendants. Although the Original Complaint and First Supplemental Complaint are very long,[1] only if one parses the allegations very carefully does it become clear that the allegations against the banks are minimal, at best. In fact, the length of the pleadings and their rambling, "Ernest Hemingway"[2] style hinder rather than help

---

[1]The Original Complaint and First Supplemental Complaint (with supplemental affidavits) are over 50 pages long. In addition, the Trustee has filed numerous briefs with supporting material which the Court has considered in determining whether the Trustee has stated a complaint on which relief can be granted. In total, the Court has carefully read over 70 pages of material in which the Trustee tries to set forth his complaint.

[2]When challenged on the style of his pleadings and his failure to limit his complaint to "a short and plain statement of the claim" (FED.R.CIV.P. 8(a), FED.R.BANKR.P. 7008), Trustee's counsel responded: "People do complain about counsel's pleadings sometimes . . . people complain of the style for different reasons: Being punchy. Short sentences. Repeated short sentences. Interjections – dashes. Exclamation points! Keeping the judge awake when he

one to understand the nature of the Trustee's allegations.[5] Therefore, the Court has reviewed and analyzed the allegations carefully as they apply specifically to the banks, but the Court attaches that analysis as Exhibit A to this opinion rather than including it in the body of this opinion.

In this part of the opinion, the Court analyzes the Trustee's contentions on a macro level. In Exhibit A, the court analyzes the Trustee's specific contentions with respect to the banks. The essence of the Trustee's allegations are:

1.    Original Complaint (filed August 12, 1997)
    a.    Jesus CANTU ("Debtor") used several assumed names that deceived depositors into "investing" over $8 million. The assumed names implied that the businesses were banks, but they were not. The assumed names under which the Debtor operated are also "Debtors."
    b.    The transactions were part of a fraudulent Ponzi scheme operated by the Debtors.
    c.    Beginning in 1994, some of the money (which was held in Debtors' account at Falcon Bank) was transferred.
        i.    About $4.6 million was wire transferred on order of the Debtors from their account in Falcon Bank to Swiss Bank Corporation in New York, and credited to the account of Banca Serfin. These funds were allegedly transferred to the account of Banca Serfin in New York so that Sanchez "could put them in his Swiss bank account."
        ii.    About $1.8 million was wire transferred on order of the Debtors from their account in Falcon Bank to Del Rio Bank and credited to Sanchez's account at Del Rio Bank. The funds were transferred to Del Rio because Del Rio is a border town and therefore the transfer would facilitate "Sanchez's efforts

---

reads the stuff. Colorful similes. Clear pictures . . . counsel tries to write like Hemingway."

[5]The bank defendants in this case complained that the Trustee's Complaint and First Supplemental Complaint were so lengthy, but unfocused, that it was difficult to understand the Trustee's contentions, much less to formulate a concise motion to dismiss for failure to state a claim. The essence of the Trustee's response is that it is absurd to contend that his pleadings are both too prolix and at the same time to contend that they do not contain sufficient particulars. In this response the Trustee is clearly wrong; just because a document is long does not mean that it is sufficient. The Court of Appeals for the Fifth Circuit put it most succinctly: "A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir. 1997).

to export them back to Mexico."[4] Sanchez later withdrew the funds from Del Rio Bank.

    iii.    The Trustee attached to his complaint copies of the applicable documents. Therefore it is obvious that the Trustee had copies of the applicable documents at least as early as August 12, 1997.

    d.    In the Original Complaint, the Trustee sought only a judgment to recover the funds from Sanchez and Cantu (who are the only defendants in the Original Complaint) as preferential transfers or fraudulent transfers.

    e.    The Trustee also alleges that Sanchez is "involved in the drug trade . . . for which he is a money man, laundering funds . . . Further demonstrating the nature of Defendant Sanchez's business, on information and belief, [the Trustee alleges that Sanchez's] brother washed up in the Rio Grande river . . . the body cut into pieces and put into plastic bags, the evident result of a gangland hit. Defendant Cantu accepted funds from Defendant Sanchez in cooperation with his intent to launder funds. The conduct of the two defendants constituted 'racketeering activity' . . .."

    f.    "The business of the debtors, as controlled by Mr. Cantu – or the business of the debtors with the other Defendant, Mr. Sanchez – was the racketeering enterprise . . . Mr Sanchez controlled Mr. Cantu's actions on his behalf by express or implicit threats of physical violence, not mere battery, but extreme threats such as of death or serious bodily injury." The Trustee never really makes clear whether he is accusing the Debtors of laundering drug money or operating a Ponzi scheme or both. The Court's best understanding is that the Trustee is principally alleging a Ponzi scheme, with the drug allegations added for dramatic impact.

2.    <u>First Supplemental Complaint</u> (as noted, no progress was made in prosecution of this adversary proceeding for 10 months after the complaint was filed, until after June 11, 1998, when the Court issued an order that the case would be dismissed for want of prosecution unless Plaintiff took effective action to prosecute the case. After issuance of that order, the Trustee filed this First Supplemental Complaint on June 24, 1998). The material and relevant allegations of that First Supplemental Complaint are:

    a.    To add four banks as defendants: (Falcon National Bank, Banca Serfin, Swiss Bank Corporation, and Del Rio Bank);

    b.    To seek attachment and sequestration of any funds in the Defendant Banks that are held in accounts for the Debtors or Sanchez;

    c.    To allege that the Defendant Banks are liable to the Trustee in bankruptcy:

        i.    For assisting the Debtors in breaching their fiduciary duties to creditors of the bankruptcy estate;

        ii.    For breach of contract–(that by handling a transfer of funds from the Debtors

---

[4]There is no explanation of why proximity to Mexico assisted the expatriation of the money (with respect to Del Rio Bank) when Sanchez allegedly moved most of the money through Switzerland.

to Banca Serafin and Sanchez, Falcon Bank and Del Rio Bank warranted "to other persons interested in the transaction" that "the transfer was in fact rightful and that no claim or defense or any party was good as against them").

iii.    Then there is a curious allegation. Trustee alleges that "To the extent that Plaintiff achieves a recovery under civil RICO, as pled in the Original Complaint, the Banks owe for treble damages, or $19.632 million. Reasonable attorneys fees for this award should be another $19.632 million."

(1)    This allegation is curious because it does not say why the banks would be liable under RICO. There is no allegation that the banks conspired with the Debtors in a racketeering enterprise. There is not even an allegation that the banks had any actual knowledge or notice that the Debtors were engaged in a Ponzi scheme or that Sanchez was involved in illegal drug activity.

(2)    However, after considering the entire complaint and all associated briefs and argument of counsel (which the court has reread twice from a transcript) the Court concludes that what Trustee's counsel is trying to say is that the banks should have known that the transfers were somehow related to illegal activity because:

(a)    The transactions involved large amounts of money;

(b)    Transfers of large amounts of money are inherently suspicious and ought to be investigated;

(c)    The banks should have been suspicious because the Debtors were not wealthy enough to make large transfers;

(d)    The wire transfers did not contain clear information about who was the ultimate beneficiary

(3)    The essence of the complaint is that the banks should have known that the Debtor and Sanchez were criminals, and therefore the banks are strictly liable for having made transfers of funds as directed by their depositor, the Debtors. Although this is not an allegation of conspiracy, for purposes of the present motions the Court will treat it as tantamount to an allegation of conspiracy.

Del Rio Bank and Falcon Bank (the "Moving Banks") filed motions to dismiss the complaint for failure to state a claim on which relief can be granted. The Court held a hearing on the motions and gave counsel substantial additional time to submit post-hearing briefs. After exhaustive review, the Court will grant the banks' motions and dismiss the complaint as to them for several reasons.

Since these are motions to dismiss under FED.R.CIV.P. 12(b)(6), the Trustee's allegations will be taken as true.

However, "[i]n order to avoid dismissal for failure to state a claim, a plaintiff must

plead specific facts, not mere conclusory allegations . . . 'And, [c]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss."[5]

## Lack of Standing:

The Trustee's meandering, inflammatory, verbose pleadings mask a very simple defect. The Trustee (as bankruptcy trustee for the Debtors, bank depositors) is suing the banks for honoring the Debtor's instructions to transfer funds that were on deposit in the Debtor's name. The transfers were made prepetition, so there was no bankruptcy impediment to the transfer. The funds had been collected and were on deposit. The contract between the Debtors and the banks required the banks to honor transfer orders given by the Debtors. The transfer orders were given in proper form by authorized persons. The Trustee does not allege that the transfers were not properly authorized by the Debtor. The Trustee is not alleging that the transfers were not made to the party to whom the Debtor ordered the funds to be transferred. The Trustee is not alleging that the banks received any of the funds, only that they honored checks and wire transfers.

A trustee in bankruptcy may pursue all claims that belong to the bankruptcy estate.[6] Even assuming that the banks are liable to the creditors of the bankruptcy estate, that does not mean that the trustee of the estate in bankruptcy may assert these claims against the banks on behalf of the creditors. The Court of Appeals for the Fifth Circuit in *In re Educators Group Health Trust (Schertz-Cibolo Universal Independent Schools District v. Wright)*[7] announced the test for determining whether a bankruptcy trustee may bring an action on behalf of the estate or whether the claim belongs exclusively to the creditors of the estate who must bring the claim (against the banks) directly.

       This case requires that we decide whether the bankruptcy court erred in determining whether certain causes of action are property of the estate. For our purposes, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). The term "all legal or equitable interests" has been defined broadly to include causes of action. *See Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988) ("Section 541(a)(1)'s reference to 'all legal or equitable interests of the debtor in property' includes causes of action belonging to the debtor at the time the case is commenced."); *In re Mortgage America Corp.*, 714 F.2d 1266, 1274

---

[5] *Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992) (citations omitted).

[6] 11 U.S.C. § 323.

[7] 25 F.3d 1281, 1283-25 (5th Cir. 1994).

(1983) (noting that the meaning of the term "all legal or equitable interests" includes, at the very least, rights of action). If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim. *See Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153-54 (5th Cir. 1987) (observing that the "general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly" requires that the trustee have the first opportunity to pursue estate actions without interference from individual creditors); *see also In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808, 812 (Bankr.N.D.Tex. 1989) ("If an action belongs to the estate, the trustee has the power and duty to prosecute the action for the benefit of all creditors and shareholders in the estate."). If, on the other hand, a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action. *See Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 433-34, 92 S.Ct. 1678, 1688, 32 L.Ed.2d 195 (1972) (holding that a trustee does not have standing to sue a third-party on behalf of debenture holders); *In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896, 900 (1st Cir. 1988) ("The trustee, however, has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them.").

Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. *See S.I. Acquisition*, 817 F.2d at 1142 (examining the cause of action premised on alter ego under Texas law); *Mortgage America*, 714 F.2d at 1275-1277 (examining the causes of action based on the Fraudulent Transfers Act and "denuding the corporation" theory under Texas law). As part of this inquiry, we look at the nature of the injury for which relief is sought. *See E.F. Hutton*, 103 B.R. at 812 ("The injury characterization analysis should be considered as an inseparable component of whether an action belongs to the [estate] or individual [creditor]."). If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. *See, e.g., S.I. Acquisition*, 817 F.2d at 1152-53 (concluding that an action based upon alter ego properly belongs to the estate, where (1) the debtor could have pierced its own corporate veil under Texas law; and (2) the debtor was unable to meet its corporate obligations due to the misuse of the corporate form, causing a derivative injury to the individual creditor); *Mortgage America*, 714 F.2d at 1275 (concluding that an action under the Fraudulent Transfers Act properly belongs to the estate, where (1) the debtor could have brought the action to recover its assets; and (2) the debtor is stripped of assets, causing a derivative injury to the individual creditor). Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the

debtor as of the commencement of the case, and thus is not property of the estate.[8]

In this case, the Trustee has asserted no direct harm to the Debtors. The Debtors were the parties who allegedly perpetuated the fraud. The Debtors were not harmed by the alleged conduct. It is the Debtors' creditors who were harmed. The Trustee has cited no authority for the proposition that the Debtors, prepetition, had a claim against the banks. Under those facts, the Fifth Circuit test would reserve the claim to the creditors, not to the Trustee. Therefore, the Trustee has no right to assert any claims against the Banks whether the claims are asserted for fraud, assisting a breach of fiduciary duty, breach of contract, civil RICO, or anything else relating to this Ponzi scheme.

The Trustee has cited authority for the proposition that a trustee in bankruptcy has the authority to recover fraudulent transfers. That proposition is beyond cavil. The Trustee is not alleging that any funds were transferred to the banks. The Trustee is alleging that the banks merely cleared wire transfers and checks by which the Debtor transferred money to Sanchez.

Since the Trustee has no right to assert any claim against the banks based on the alleged facts, the Court need not address the substantive issues in the various actions asserted. However, for completeness, the Court will address those issues.

### Failure to State a Claim for Fraud, Breach of Contract, or Breach of Fiduciary Duty:

The Trustee has alleged simply that transfers of funds were processed by banks. There is no allegation that the banks had any knowledge of wrongdoing. There is no allegation that there was any relationship between the banks and the Debtors except for a generic depositor/bank relationship. There is no allegation of any relationship (social, business, or other) between the Debtors and the bank or between the Debtors and any bank personnel. There is no allegation of any lending, trust, or other relationship (other than the deposit relationship) between the banks and Debtors or between the banks and the creditors of the estate. Indeed, there is no allegation that the banks even suspected that these Debtors had any creditors. There is no allegation that the banks directly benefitted in any way from the transfers. There is no allegation that any of the money allegedly fraudulently obtained from Mexican nationals was used to pay any of the Debtors' loans to the bank or to pay any obligation of any kind to the banks or to any party related to the banks. The best argument that the Trustee can muster is that the banks should have known that wrongdoing was involved because large amounts of money were involved.

The Trustee contends that a bank has a duty to investigate all large transactions and that a bank has something approaching strict liability if it does not. Despite repeated requests from the Court to cite authority for that position, the principal authority cited by the Trustee is the expertise of its own counsel. Counsel attached to his memorandum his own thirty five page law review article

---

[8]*Id.* at 1283-25.

entitled "The Scientific Method in Legal Thought: Legal Realism and the Fourteen Principles of Justice." The Court was unable to find in that attachment any authority that is persuasive on the issues at hand. The Trustee's counsel also states in his memorandum:

> Trustee's counsel is a former law professor and taught banking law for twelve years, and is aware that the FDIC insists that banks examine all large transactions in which a large deposit is made and in a short period of time the money is withdrawn from the bank. Last time Counsel looked, a year or two ago, transactions of $25,000 or more were sufficiently 'large' to call for such scrutiny.

The memorandum cited no more persuasive authority: nothing in the statutes, Federal Register, or reported decisions. The Court is not persuaded by the memorandum.

The Trustee relies on *Federal Sav. & Loan Ins. Corp. v. Kearney Trust Co.*[9] for the propositions (i) that a bank "pays at its peril" if the institution is shown as the payee on a writing but someone else is actually intended to get the credit, and (ii) that this is a federal rule applicable to all banking institutions connected with the FDIC. The case does not stand for the propositions cited. First, in *Kearney*, the court did not apply a federal rule of substantive law because the payee bank was a member of the FDIC. The court in *Kearney* applied a federal rule because the maker of the check was a savings and loan association (S&L) chartered under an act of Congress. (There is no allegation that Centu or his d/b/a's were federally chartered.) Second, the facts in *Kearney* are significantly different from any alleged in this case. In *Kearney*, the savings and loan association was small, operated by only two people, but it was a federally chartered institution, owned by its depositors. The president of the S&L (Wilson) and his sister-in-law were the only officers and employees. The officers of the defendant bank, Kearney Trust, knew that Wilson personally owned farms near their town and that Wilson needed personal bank accounts and funds to operate those farms. Wilson told Kearney's officers that he was going to write checks on the S&L, payable to the defendant (Kearney Trust), but that the checks should be deposited into Wilson's personal account, not into an account for the S&L. After direct discussion of these facts, officers of Kearney agreed to handle the transactions in this way.

These facts are quite different from the allegations in this case. The court in *Kearney* did not hold that a bank pays at its peril. The *Kearney* court held that, after being told by the president of the S&L that association money was to be deposited in his personal account, Kearney Trust was under a duty to investigate whether the president of the association was indeed authorized to appropriate these funds to himself. The bank had this obligation because the representation was suspicious on its face.

> [D]efendant relied solely upon Wilson's representations at its peril, because although

---

[9] 151 F.2d 720 (8th Cir. 1945).

Wilson was president of the association he was acting outside the ostensible scope of his agency in directing that checks made payable to the defendant should be credited to his personal account.[10]

The *Kearney* court did not impose strict liability on the defendant bank. The *Kearney* court merely held that, in these suspicious circumstances, the defendant bank should have asked the board of directors of the S&L whether Wilson (president of the S&L) had authority to pay these funds into his personal account. The clear indication is that if Wilson had such authority, the bank would have had no liability. In fact, in a virtually identical case involving the same S&L and its president, Wilson, the 8th Circuit found that the defendant bank had no liability on the same fact pattern because Wilson had authority to make the checks payable to himself.[11] Obviously, Kearney does not stand for the strict liability principle for which Trustee cites it.

In the case at bar, there is no allegation that the Debtor did not have the authority to transfer the funds or that the banks did not transfer the funds as directed. There is no allegation that the funds belonged to a federally chartered corporation for whom the Debtors were merely agents. There is no allegation that the banks had actual notice of probable lack of authority to transfer funds. Therefore Kearney is simply not on point.[12]

There is no allegation in the Trustee's Original Complaint or in the First Supplemental Complaint that the funds in the bank accounts were not collected and available for transfer merely upon order of Cantu. There is no allegation that the transfers were not properly authorized. There is no allegation that these were corporate funds misappropriated by an officer. There is no allegation that there was some authority such as a board of directors of whom the defendant banks had notice and opportunity to inquire.

The Court has, on its own, attempted to locate authority for the proposition that banks are strictly liable for processing transfers of funds that are in some way related to the depositor's improper conduct. Although the Court cannot represent that it has thoroughly researched the issue, the only authority that the Court could find involves transactions in which the bank made a profit on the transaction (beyond mere transaction fees and/or deposit benefits) or had some relationship to the transaction beyond simply being a depository bank.[13] There is no allegation in Trustee's

[10]151 F.2d at 727.

[11]*Fed. Sav. & Loan Ins. Corp. v. First Nat. Bank, Liberty, Mo.*, 164 F.2d 929 (8th Cir. 1948).

[12]*See also Pettigrew v. Citizens Bank Trust*, 229 B.R. 39 (N.D. Ga. 1998).

[13]The Trustee has cited *Grebe v. First State Bank of Bishop*, 150 S.W.2d 64 (Tex. 1941) for the proposition that banks have a duty not to assist other persons in violation of fiduciary

pleadings of any such facts.

In fact, the Trustee seems to concede that he has no indication that the banks had any hint of wrongdoing. The Trustee's memorandum makes it clear that he is simply hoping that if he is allowed enough discovery, he might find something incriminating in a deposition or in the bank's files.

Why wouldn't Trustee be entitled to see if maybe Del Rio's sticking its head into the sand was ineffectual? Maybe its officers read the newspaper, or listened to the television news. Maybe it discovered UNOFFICIALLY what it claims it never had a duty to look at officially. Actual knowledge can be acquired other than just by looking at the face of a negotiable instrument (or a bankwire record). Some people live in a community, and hear what is going on.[14]

FED.R.CIV.P. 9(b) requires that fraud be pleaded with particularity. Despite the verbosity and histrionics in the Trustee's pleadings, the principal arguments on which the Trustee rests are: (i) the bank should have been suspicious, and (ii) the Trustee is entitled to extended discovery to find some germ of evidence that might convince someone that the banks had constructive knowledge of wrongdoing. That is not enough to meet the requirements of the federal rules.[15]

Our reverential treatment of the large achievements of the 1938 rules may not have

_____

duties to third parties. *See* Plaintiff's First Supplemental Complaint and Application for Writs of Sequestration, Attachment, and Garnishment at 13 (Docket # 12). However, the *Grebe* court made clear that actual knowledge was required to trigger this duty. Indeed, the court stated the rule in Texas is as follows: "If the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal of funds, or if it participates in the profits or the fruits of fraud, then it will be undoubtedly liable." *Id.* at 68. *See also Mauriceville Nat. Bank v. Zernial,* 892 S.W.2d 858 (Tex. 1995) (per curiam)(recognizing that when a depositor deposits funds into a bank account, the funds remain unrestricted and holding that absent an express creation of a trust, a bank is entitled to utilize the funds to set off debts of the depositor despite banks knowledge of claims to the funds asserted by third parties). *Dunagan v. Bushey,* 263 S.W.2d 148, 153 (Tex. 1953) only finds liability when the bank appropriates the funds to itself ("where a bank receives the proceeds the rule of law is that the bank is liable if it permits the depositor to withdraw funds held in trust and to apply such funds to the payment of such depositor's obligations to the bank").

[14]Trustee's Original Brief Answering Del Rio Bank & Trust's Motion and Brief to Dismiss (docket # 29) P. 6.

[15]*Williams v. WMX Technologies,* 112 F.3d. 175.

P:\DRAFTS\972146 Opinion Dismissing Case.wpd
990325.1452
Page 11

fully counted its price, or at least the price over time seems to have gone up as pretrial process dwarfs actual trials. We do not fully understand the extent of these difficulties or their cause. It does remain clear that ready access to the discovery engine all the while has been held back for certain types of claims. An allegation of fraud is one. Rule 9(b) demands a larger role for pleading in the pre-trial defining of such claims.

That said, the requirement for particularity in pleading fraud does not lend itself to refinement, and it need not in order to make sense. Directly put, the who, what, when, and where must be laid out before access to the discovery process is granted. So today we neither set springs for the unwary nor insist on "technical" pleading requirements. We remind that this bite of Rule 9(b) was part of the pleading revolution of 1938. In short, we apply the rule with force, without apology. At the same time, we read Rule 9(b) as part of the entire set of rules, including Rule 8(a)'s insistence upon "simple, concise, and direct" allegations. Relatedly, while 9(b) stands as an exception to an overarching policy of immediate access to discovery, it did not reflect a subscription to fact pleading.

The inferior courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific. When a limitation period looms large and the context strongly suggests that claimed "fraud" walks close to non-actionable expression of opinion, 9(b) takes on especial force. Finally, we must not dim the beacon of Rule 8(f) that "all pleadings shall be construed as to do substantial justice." We must give a fair opportunity to plead.

A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail.[16]

With respect to breach of contract, the Trustee does not clearly indicate what contract he is talking about. The Trustee asserts that by clearing negotiable instruments and making wire transfers, the banks warranted that "the transfer was in fact rightful and that no claim or defense or any party was good as against them." The Trustee cites no section of the Uniform Commercial Code as authority. The Court is not sure what a "rightful" transfer is, and the Court is unaware of any defense that is or could be asserted to the transfer. There is no allegation that there were not sufficient funds on deposit in the bank and there is no allegation that the transfers were not properly authorized. The Court has not been cited to any contract between Debtors and the banks that was breached by the banks.

---

[16] *Id.*

The Trustee has alleged a number of other wrongs, including assistance in breach of fiduciary liability, conversion, *etc.* It is never quite clear whether the Trustee is making these allegations as to Cantu and Sanchez, or as to the banks, or both. Regardless, the pleadings are not sufficient. The Trustee does not allege the banks even knew that the Debtors had creditors, nor is there any allegations that fiduciary obligations existed between the Debtors and their creditors or between the banks and Debtors' creditors. Much less is there any allegation that the banks consciously assisted the Debtor in violating fiduciary duties or converting assets of the Debtors' creditors.

Therefore, the Trustee has failed to state a claim for fraud or breach of contract, fraud, or assistance in breach of fiduciary duties and conversion.

### Violations of Racketeer Influenced Corrupt Organizations Act (RICO)[17]

The allegations with respect to Falcon Bank and Del Rio Bank are, essentially, that they processed wire transfers and payment of checks for the Debtor and Sanchez, who were operating an illegal Ponzi scheme.

RICO[18] prohibits: (i) investment of proceeds of racketeering activities in interstate commerce; (ii) obtaining control of activities in interstate commerce through racketeering activities; (iii) any person employed by or associated with an interstate commerce activity to conduct that activity through a pattern of racketeering activity; and (iv) conspiracy to violate the first three proscriptions. Civil redress for violation of RICO is the authority of any person injured by a RICO violation to sue for damages.[19]

There are any number of reasons why the Trustee fails to state a RICO claim on which relief can be granted. First, as noted earlier, the Trustee has no authority to assert claims that belong to creditors of the estate. The Trustee can only bring claims that belong to the estate itself. Therefore, whatever claim the Trustee is trying to assert, the Trustee is representing the Debtors. But Debtors were the wrongdoers. They were not the victims. Perpetrators of a RICO crime may not sue their colleagues for RICO civil damages.[20]

---

[17]18 U.S.C. § 1961 *et seq.*

[18]18 U.S.C. § 1962.

[19]§ 1964.

[20]*In re Hunt*, 149 B.R. 96 (Bkrtcy.N.D.Tex. 1992); *Lopez v. Dean Witter Reynolds, Inc.*, 591 F.Supp. 581 (N.D. Cal. 1984); *See also, Loren E. Kalish, Plaintiffs in Complicity: Should There Be An Innocent Party Requirement for Civil RICO Actions?*, 47 Emory Law Journal 785 (1998).

Second, the Trustee has alleged no damages to the Debtors estates. The Debtors allegedly were the felons, not the victims. The Debtors were enriched by their alleged crime, not impoverished.

Third, none of the RICO proscriptions have been alleged. There is no allegation that the Banks received any proceeds of racketeering activities, much less invested them or controlled racketeering activities. There is no allegation of a conspiracy involving the banks. The only conceivable relationship of the banks to a RICO claim would be that the banks were somehow associated with the racketeering activity because they executed wire transfers and cleared checks on order of the enterprise. But the Fifth Circuit has held that this allegation, without more, is not enough.[21]

Therefore, the Trustee has failed to state a claim under civil RICO.

### Opportunity to Amend the Pleadings:

There are a number of reasons why the Trustee will not be given an opportunity to amend his complaint to attempt to cure its defects as set forth above:

1.   First, the Trustee has not requested such an opportunity and apparently does not want one. The Court has held a number of hearings in this matter, and has suggested at several of them that the Trustee should carefully respond to the 12(b)(6) motions. On November 5, 1998, in particular, upon granting the Trustee's motion to employ special counsel in this matter, the Court advised special counsel that a 12(b)(6) motion was pending, that the Court had reviewed the motion, and that counsel should treat the motion seriously because it appeared to have merit. In the four months since then, the Trustee has not asked for permission to amend. In fact, the Trustee has cavalierly dismissed any suggestion that the complaint could or should be amended:

> They got all the data we have! Do we have to INVENT things to plead fraud with particularity? Are we supposed to speculate on Mr. . . . Sanchez's thoughts and put them down verbatim? . . . [W]e haven't even alleged the BANKS were the ones committing the fraud, just that they should have known these guys were committing fraud, and not lent their facilities to them for doing it.[22]

---

[21]*Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992).

[22]Trustee's Original Response Answering Falcon National Bank's Motion and Brief To Dismiss (docket # 30) p. 4.

Finally, in his Trustee's Third Brief Concerning Motions to Dismiss . . . " (docket #40), the Trustee states: "Nothing would really be improved by requiring a repleading."

2.    Second, the Court concludes, as a matter of law, that the Trustee cannot amend to cure the deficiencies in the complaint because the Trustee does not have a right to bring the claim. The Trustee does not have the right to assert actions that belong to the creditors and that are not property of the estate. The claims asserted in this adversary proceeding against the banks (if they are valid) belong to the creditors of the estate.

3.    Third, these bankruptcy cases were filed 3½ years ago. The Trustee has had access to all of the Debtors' documents, such as they are, for 3½ years. The Trustee has also had access to FRBP 2004 for 3½ years to discover any facts known by third parties (including banks). This adversary proceeding was filed over 1½ years ago. The Trustee has had access to federal rules of discovery since then to find facts indicating liability. The Trustee will not be allowed additional time.

4.    Finally, after careful consideration of the pleadings filed by the Trustee, the Court will use its inherent authority over the Trustee to deny him the authority to prosecute what appears to be frivolous actions against the banks.

## Conclusions:

By separate order issued this date, the claims against Falcon Bank and Del Rio Bank are dismissed for failure to state a claim on which relief can be granted.

## Warning of Possible Future Imposition of Sanctions:

The Court recognizes the right of counsel to argue nuances and multiple interpretations of existing law. The Court further recognizes the right of counsel to make nonfrivolous arguments for the extension, modification, or reversal of existing law or the establishment of new law. Finally, the Court recognizes counsel's right and duty to provide zealous and effective advocacy.

Nevertheless, the proper functioning of the legal system requires a certain degree of civility and respect for opposing counsel and for the adjudicatory process. In addition, FRBP 9011 prohibits assertion of frivolous or unsubstantiated claims. The Court is hereby warning Colin Kaufman, counsel for the Trustee, that he has crossed the line in this case. In the following paragraphs, the Court will address separately the issues of (i) respect for the process and for opposing counsel, and (ii) frivolous claims.

Civility and respect are demanded by this Court simply as proper conduct before a federal court. From time to time, if counsel appear to cross the line, the Court usually does nothing more than verbally to remind counsel to act appropriately. However, the Trustee's pleadings in this case

cross the line in a more egregious way. The Court finds Trustee's counsel's pleadings (especially his memoranda of authorities) in this case to be dissembling, inflammatory, sophomoric, and generally inappropriate.

These defects cause (at least) two serious consequences. First, the Court wastes time trying to understand the dissembling argument in the pleading and is distracted from the true nature of the controversy. This Court has read and reread the complaint. The Court is still not sure exactly what Complainant is alleging. The Court has done the best it can to synthesize a "shotgun blast" of allegations in order to determine whether a claim has really been stated. In addition, counsel cites authorities as standing for propositions far beyond their reasonable interpretation. While this kind of verbal repartee might have worked well for counsel in his career as a law professor, more candor is appropriate in legal memoranda.

Second, and much more important, inflammatory comments directed at opposing counsel inevitably result in an escalation of hostilities, a result that is injurious to all. In its Order of Adoption of the Texas Lawyer's Creed–A Mandate for Professionalism,[23] the Supreme Court of Texas wrote: "These rules are primarily aspirational. Compliance with the rules depends primarily upon understanding and voluntary compliance, secondarily upon re-enforcement by peer pressure and public opinion, and finally when necessary by enforcement by the courts through their inherent powers and rules already in existence." This Court believes that it has the inherent authority to reprimand a lawyer whose pleadings are so dissembling and disrespectful to his adversary that the sarcasm and invective distract from the proper business of the Court.

The following examples are found in the Trustee's Original Brief Answering Del Rio Bank & Trust's Motion and Brief to Dismiss (docket #29) and Trustee's Original Response Answering Falcon National Bank's motion and Brief to Dismiss (docket #30). However, the Court would characterize virtually all of Trustee's counsel's pleadings as similar.

Del Rio Bank's motion to dismiss made a very straightforward argument: that the Trustee had alleged illegal activity by Cantu and Sanchez, but had alleged no wrongdoing by Del Rio and no breach of any legal duty applicable to Del Rio. Del Rio's memorandum discussed at some length the statutory and jurisprudential definitions of duties applicable to the claims that Trustee was purporting to assert, concluding that there was no allegation of a breach of any duty applicable to Del Rio. Therefore, Del Rio argued, the complaint against Del Rio should be dismissed for failure to state a claim on which relief could be granted.

The Trustee's response was sarcastic, inflammatory and grossly mischaracterized Del Rio's motion. The Trustee asserted that Del Rio had argued: ". . . [E]ven if their customers are criminals,

---

[23]Adopted by Order of the Supreme Court of Texas November 7, 1989, *reprinted in* TEXAS RULES OF COURT–STATE, 505 (West 1998).

they don't owe anyone a duty to stop helping these criminals take advantage of innocent members of the public . . . . They can offer their services as a facility for people who are doing money laundering, and defrauding innocent members of the public, and no matter what, nobody can stop them."[24] Del Rio never suggested any such thing. In addition, although this specific example is merely a waste of time for the Court to read, other similar (but less obvious) incorrect characterizations by Trustee's counsel required hours for the Court to examine, analyze, and interpret.

Falcon Bank's motion placed its emphasis more on the Trustee's failure to state fraud and RICO claims with sufficient specificity. To this, the Trustee again replied with sarcasm, gross overstatement, and inflammatory rhetoric.

"Falcon National Bank . . . makes its motion to dismiss based on a simple proposition: The theory of "notice pleading" followed in federal courts for the last fifty years doesn't apply to them. They are not governed by little things like the rules of pleading that apply to everyone else. It doesn't matter what we plead. It doesn't matter what we told them. It doesn't matter . . . [and the diatribe goes on *ad nauseam*] . . . . They still get to dismiss the claims because they didn't like the way RICO was pled. That's it. No motion for more definite statement. No nothing. They get to go home because, even though they know exactly what happened, and why it is allegedly a civil wrong for which they owe damages, some alleged technical requirements for recovery (quite obviously met and satisfied on the FACTS) are not sufficiently set out in the PLEADINGS."[25]

It is not fair to opposing counsel to subject them to this kind of invective and to expect them to respond with civility, respect, and professionalism.

Therefore, Colin K. Kaufman, counsel for the Trustee, is hereby admonished to conduct himself in all future litigation before this Court in accordance with the civility and respect for opposing counsel generally required for conduct in federal courts and as articulated in The Texas Lawyer's Creed–A Mandate for Professionalism, paragraph III, including, but not limited to the requirement of courtesy in III(1), III(9), and III(10). Counsel is admonished that any repetition of such conduct will result in more severe sanctions.

In addition to uncivil posturing, Trustee's counsel appears to have admitted that his

_____

[24]Trustee's Original Brief Answering Del Rio Bank's Trust's Motion and Brief to Dismiss (docket # 29) p.1.

[25]Trustee's Original Response Answering Falcon National Bank's Motion and Brief to Dismiss (docket # 30) pgs. 1-2.

supplemental complaint was just an attempt to find a deep pocket. Counsel has made it reasonably clear that he has no evidence that the banks engaged in any conduct that makes them liable to the estate. Counsel even made it fairly clear that what he wanted was either: (i) an opportunity to find something in a deposition or discovery document that might suggest suspicion, or (ii) get a settlement from the banks. In the Trustee's Third Brief, counsel wrote:[26]

> 9. <u>Offer to Do Equity.</u> "As this Court is aware, Trustee's counsel believes in settling any case that can be settled . . . [s]o they could probably pay a toe or two and get out now, if they feel the costs of trying the case are too high."

Although the Court has some concern that the allegations against the banks were filed with insufficient investigation and evidentiary support and possibly with improper motives, the Court will not consider other FRBP 9011 sanctions *sua sponte*. If such sanctions are to be considered, they will be considered only on motion of the defendant banks, after notice and hearing, and upon proper showing of the elements required for such sanctions.[27]

SIGNED March 25, 1999.

Wesley W. Steen

WESLEY W. STEEN
UNITED STATES BANKRUPTCY JUDGE

The Clerk shall notice:
Anthony Juarez, Chapter 7 Trustee
Colin K. Kaufman
James A. Hoffman
Don Krause

---

[26]Trustee's Third Brief Concerning Motions to Dismiss Filed by Falcon National Bank and Del Rio Bank & Trust (docket # 40) p. 14.

[27]A motion for sanctions under Rule 11 shall be made separately from other motions or requests. The motion must be served on the opposing party at least 21 days before filing with the Court. In order to afford the opposing party notice and opportunity to withdraw or correct the challenged pleading. *Elliot v. Tilton*, 64 F.3d 213, 215-216 (5th Cir. 1995).

F:\DRAFT\972146 Opinion Dismissing Case.wpd
990325.1452
Page 18

**Exhibit A--Analysis of Allegations Specific to Falcon Bank and Del Rio Bank**

The principal part of this opinion addresses the Trustee's Complaint and Supplemental Complaint in general terms. The Court did so because attempting to address both the Trustee's overall argument and the allegations specific to Falcon Bank and Del Rio Bank made the opinion just too complicated. However, the Court has taken considerable time to analyze the allegations specific to these movant banks, and presents the following analysis of those allegations. The essential allegations with respect to the Banks are actually *quite minimal*, at best. The Original Complaint and First Supplemental Complaint, taken together allege:

1.  The names and corporate status of the Banks;
2.  That the Debtor maintained one or more accounts at the Banks;
3.  That $6.544 million was "held in or passed through" those bank accounts;
4.  That banks are "not permitted to assist other persons in their violation of their fiduciary duties to third persons";[28]
5.  "This obligation not to assist in the breach of fiduciary duties comes . . . from membership in the FDIC or any similar scheme of federal deposit insurance";[29]
6.  That

    a.  "It is well-known that any institution which takes a check payable to that institution in payment of satisfaction of the obligation of someone else is ON NOTICE (sic) of any breach of fiduciary duty of other such wrongdoing being committed by that person submitting the check."[30]

    b.  "It is also well-known that the mere relative size of a particular transaction can be so unusual in relation to the financial power of the transferror as to put a bank on notice that the transaction is fishy (sic), not in the ordinary course of business, and prevent it from obtaining the safe harbor of being a holder in due course."[31] The Complaint continues to allege that the Debtor was "lightly-asseted (sic) and basically broke". The Complaint does not assert that the Banks knew the Debtors' financial status. Nor does the Complaint assert that the Debtors' deposits in the Banks were not honored in accordance with ordinary banking practices. The Complaint merely alleges that "When the lightly-asseted and basically broke Jesus M. Cantu decided to transfer $4.675113 million from . . . [one of the corporate entities] to Banco Serfin for the benefit of Reginaldo Ramon Sacheez, this was many times greater than any human being could basically have believed to be an

---

[28]First Supplemental Complaint, ¶12.

[29]Id

[30]Id. ¶ 13.

[31]Id. ¶14.

honest transfer."

c.  There are no specific allegations of "fishy" transfers with respect to Del Rio Bank. However, the original complaint, filed in 1997, in which Del Rio Bank was not a defendant, asserts that one or more of the Debtors made a total of 26 transfers to the account of defendant Sanchez at Del Rio Bank. These transfers allegedly occurred over a period of approximately 6 months. The transfers ranged from a low of $2,630 to a high of $287,500. The average transfer was $71,120.48.[32] As noted below with respect to Falcon Bank, the Trustee asserts that these transfers were so large that they should have alerted Del Rio Bank to a pattern of illegal behavior.

d.  The only allegations with respect to "fishy" transfers related to Falcon Bank[33] are that

    i.  One of the Debtors made a transfer of $4.080128 million with the notation "wire transfer". Plaintiff asserts that this was "fishy" because the legend on the check did not say "to whom" or "why" the money was to be transferred by wire. Similar allegations are made with respect to other transfers by Falcon Bank to other banks.

    ii.  Although the statement of the allegation in the Complaint is verbose, the essence of the complaint is:

        (1)  The document indicates a transfer to another bank but does not indicate the identity of the ultimate beneficiary of the transfer, and

        (2)  "[T]he relatively enormous size of other writings[34] put the banks involved on notice that something strange was happening with the money, and they might be assisting wrongdoers."

There are no other specific allegations of activity by the Banks. From this activity (maintaining accounts and making transfers as directed by the depositor) the Complaint then alleges certain conclusions, including: (i) that the Banks were cooperating with the Debtor in certain criminal schemes, (ii) that the Banks were positively eager "to assist the wrongdoers in carrying out their schemes to defraud the public, and (iii) that accepting deposits and making transfers as directed by their depositor constituted participation in a

---

[32]See Exhibit B.

[33]Id. ¶ 14. (All of the following subparagraphs related to subparagraphs of this paragraph in the First Supplemental Complaint.)

[34]Presumably the Complaint is referring to the amount of money involved, not the actual "size of . . . writings" themselves.

racketeering activity within the purview of the RICO Act.[35]

The Trustee makes no allegation that the Debtors did not have sufficient funds on deposit to make the transfers in question. The Trustee makes no allegation that the transfers in question were not properly documented and directed by the depositor. The Trustee makes no allegation that the bank accounts were documented as trust accounts or that the Banks had any indication that any party other than the Debtor depositor had any interest in the accounts. The Trustee makes no allegation that the Banks benefited in any way, other than the usual benefit that a bank derives from having funds on deposit.

The Trustee makes no other allegations with respect to knowledge, intent, motive, or criminal activity by the Banks. The sole sum and substance of the Trustee's allegation is that the Banks must have known that criminal activity was involved because the transactions were so large and because the ultimate beneficiary of wire transfers was not disclosed in some circumstances. The Court prepared the attached chart from the allegations of the complaint. Obviously, except for the alleged $4.6 million transfer to a Swiss Bank account, the transfers are really not that large, averaging only $71,000, and occurring over a period of about 6 months: a period too short to constitute a RICO pattern of racketeering and too long to constitute a "quick withdrawal."

---

[35] The original complaint, filed in 1997, does not name the Banks as defendants. The defendants in the original complaint are the Debtor and Reginaldo Sanchez, the Debtor's alleged partner in crime. The original complaint does, however, allege several crimes.

| | Date | Amount |
|---|---|---|
| **Exhibit B**<br><br>**Alleged Transfers From Falcon Bank to Account in Del Rio Bank** | 10/3/94 | $251,753.00 |
| | 10/28/94 | $187,500.00 |
| | 11/4/94 | $200,000.00 |
| | 11/4/94 | $10,250.00 |
| | 11/7/94 | $50,000.00 |
| | 11/8/94 | $250,000.00 |
| | 11/8/94 | $250,000.00 |
| | 11/9/94 | $15,000.00 |
| | 11/14/94 | $150,000.00 |
| | 11/15/94 | $10,250.00 |
| | 11/17/94 | $2,630.00 |
| | 11/17/94 | $2,630.00 |
| | 11/18/94 | $5,262.00 |
| | 11/21/94 | $50,937.50 |
| | 11/21/94 | $2,645.00 |
| | 11/23/94 | $50,937.00 |
| | 12/20/94 | $2,932.00 |
| | 12/23/94 | $30,973.00 |
| | 12/29/94 | $23,229.00 |
| | 1/5/95 | $30,000.00 |
| | 1/5/95 | $39,689.00 |
| | 2/10/95 | $50,000.00 |
| | 2/13/95 | $25,000.00 |
| | 2/21/95 | $20,000.00 |
| | 3/15/95 | $30,015.00 |
| | 3/29/95 | $7,300.00 |
| | Total | $1,349,132.50 |
| | Number of transactions | 26 |
| | Average Amount Per Transaction | $71,120.48 |