23

United States District Court
Southern District of Texas
FILED

DEC 2 7 2002

Michael N. Milby
Clerk of Court

United States District Court
Southern District of Texas
ENTERED

JAN 0 2 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| IN RE:  CHARLES B. FELDMAN D/B/A | § | CIVIL ACTION NO. B-02-073 |
| CHARLES FELDMAN INVESTMENTS | § | |

## ORDER

BE IT REMEMBERED that on December 27, 2002, the Court **AFFIRMED** the Memorandum Opinion And Order On Colin Kelly Kaufman's Final Fee Application [Bankr. Dkt. No. 469] and **AFFIRMED** the Final Judgment On Final Fee Application Of Colin Kelly Kaufman [Bankr. Dkt. No. 470].  Furthermore, the Court **GRANTED** Appellant's Motion For The Court To Take Judicial Notice [Dkt. No. 12]; **DENIED** Appellant's Motion For The Court To Prevent Mooting Of The Appeal [Dkt. No. 20]; and **DENIED AS MOOT** Trustee's Motion To Dismiss For Failure To State A Claim [Dkt. No. 22].

## I.    Standard of Review

In reviewing a bankruptcy court decision, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal.  *See In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir.1992).  This Court will not set aside a bankruptcy court's findings of fact unless they are clearly erroneous.  FED. R. BANKR. P. 8013;  *In re McDaniel*, 70 F.3d 841, 842-43 (5th Cir.1995).  A finding of fact is clearly erroneous if, after review of all the evidence, the Court is left with a firm and definite conviction that the bankruptcy court erred.  *See In re McDaniel*, 70 F.3d at 843.  This court reviews legal conclusions de novo.  *See id.*; *In re Herby's Foods, Inc.*, 2 F.3d 128, 130 (5th Cir. 1993).  "The bankruptcy court's determination of attorneys' fees is reviewed for abuse of discretion, and its specific findings of fact supporting the award are reviewed for clear error."  *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994).  "[T]he amount awarded lies in the judge's discretion and is recalculated only if the judge abuses that discretion."  *Id.* (citing *Longden v. Sunderman*, 979 F.2d 1095, 1100 (5th Cir. 1992)).

## II.    Issues Presented

This appeal presents two issues for the Court to decide.  Were the bankruptcy court's findings that Kaufman ("Appellant") breached fiduciary duties owed to the Feldman Bankruptcy Estate clearly erroneous?  Second, was the bankruptcy court's finding that Kaufman was entitled to a reasonable and necessary fee of $50,000 plus expenses clearly erroneous or an abuse of discretion?

## III.    Factual Background

In 1990 Charles B. Feldman d/b/a Charles Feldman Investments, filed for Chapter 11 bankruptcy.  A bankruptcy plan (the "Plan") was confirmed in 1992 and named Harlingen National Bank as Trustee.  In Section 7.3, the Plan clearly states that the Trustee is to "have the powers, duties and responsibilities as set forth in the Texas Trust Act."  In Section 15.1(k) of the Plan, the bankruptcy court retained jurisdiction to determine among other things applications for compensation and expenses.  The Plan further provided that the Debtor was to pay funds from the sale of Debtor's assets and net income received from Debtor's businesses over to the Plan Trustee who in turn was to make an accounting and distribution to creditors every six month.  The main, if not sole, function of the Trustee was to receive funds from the debtor, distribute those funds to the creditors, and provide accountings to the bankruptcy court, creditors, and debtors.

In 1992, Kaufman was substituted as Trustee.  As Trustee, Kaufman hired himself to serve as an attorney for the bankruptcy estate.  The Modification To First Amended Plan Of Reorganization Of Charles B. Feldman D/B/A Charles B. Feldman Investments ("Modified Plan"), signed by the parties and Kaufman, was implemented to substitute Kaufman as Trustee.  Under the Modified Plan, Kaufman was required to "submit his accounts to the bankruptcy court for approval."  Moreover, the Modified Plan stated that "[t]he Plan Trustee shall submit his accounts to the Bankruptcy Court for approval.  The Plan Trustee shall also submit a final accounting at the end of the Plan Term Years to the Bankruptcy Court for its approval."

Kaufman collected $354,066.92 during his tenure as Trustee.  Kaufman paid himself $278,631.50 in fees from the corpus of the estate.  Between June 1999 and

2

March 2001, Kaufman also paid himself $49,428.95 from the corpus of the estate for work which he had not yet done. After payment of other court-approved fees and expenses and payment of Kaufman's fees there remained a trust corpus of $600. Kaufman paid himself these fees without filing periodic attorneys' fee applications; rather, he filed a fee application only after the bankruptcy court ordered him to file a Final Fee Application. By the time Kaufman filed a Final Fee Application, almost the entire corpus of the estate had been disbursed for fees and expenses.

Kaufman paid himself at the rate he charges for legal work and never distinguished between his work as the Trustee and his work as an attorney for the Feldman Bankruptcy Estate. The accountings indicate that Kaufman paid himself at the hourly rate he charges for attorney services, $400 per hour, regardless of whether he was performing legal services or trustee services. Apparently Kaufman negotiated this fee and the parties agreed to pay the same hourly fee regardless of the type of services rendered.

CKS Asset Management, Inc. ("CKS"), the largest creditor of the bankruptcy estate, began requesting accountings in 1995 and received seven documents labeled "Accounting." None of the documents revealed that the expenses of the trust might exceed the corpus. In his deposition, Kaufman admitted that he never furnished accountings containing all of the expenditures because he did not want to tell the Debtor that the estate had no funds. As a consequence the creditors were not informed of the assets remaining in the estate or the true liabilities of the estate.

Moreover, Kaufman never made a semi-annual distribution to the creditors as required by the Plan. There are no receipts or entries in any of the accountings delivered which indicate that a semi-annual payment was made to the creditors, and Kaufman admits that he never made the semi-annual payments as required. However, the amount of the semi-annual payments was never fixed by the bankruptcy court.

CKS filed a motion in the bankruptcy court to remove Kaufman as Trustee, and on June 28, 2001, the bankruptcy judge held an evidentiary hearing and removed Kaufman as Trustee. On June 29, 2001, the bankruptcy court entered an order removing Kaufman as Trustee. On August 21, 2001, the bankruptcy court ordered

3

Mike Boudloche ("Appellee") to succeed Kaufman as Trustee.

Finally on January 29, 2002, the bankruptcy court ordered Kaufman to enter a Final Fee Application, which he filed on February 8, 2002. The Court held a hearing on February 22, 2002, to consider Kaufman's fee application. On March 7, 2002, the bankruptcy court entered a Memorandum Opinion And Order On Colin Kelly Kaufman's Final Fee Application [Bankr. Dkt. No. 469] finding that Kaufman as Trustee breached his fiduciary duties. The bankruptcy court also denied Kaufman's fee application of $451,926.11. In its discretion, the bankruptcy court awarded a fee of $50,000 plus expenses and ordered Kaufman to disgorge the remainder of the fees he had paid himself. The Final Judgment On Final Fee Application Of Colin Kelly Kaufman [Bankr. Dkt. No. 470] was entered against Kaufman on August 12, 2002, and ordered him to pay the Trustee $214,871.89 plus interest at the federal judgment rate. Kaufman appealed the findings and rulings in Bankr. Dkt. Nos. 469 and 470.

## IV. Analysis

### A. Appellant's Motion For The Court To Take Judicial Notice

Appellant requests the Court to take judicial notice of the grievance CKS filed against him in the United States District Court for the Southern District of Texas, part of which is still pending. CKS complained that disciplinary action should be taken against Appellant on four separate bases. Upon the investigating judge's recommendation, Appellant was informed that (1) disciplinary action will not be taken on three of the four allegations in the grievance and (2) further disciplinary action on the charge of violating Texas Disciplinary Rules of Professional Conduct 1.14(a) is deferred pending the outcome of this appeal and the proceedings of the State Bar of Texas. The Court **GRANTS** Appellant's request and hereby takes judicial notice of the filing of the grievance against Appellant and the current status of that proceeding.

### B. Breaches of Fiduciary Duties

The Plan specifically states that the "Plan Trustee shall have the powers, duties,

4

and responsibilities as set forth in the Texas Trust Act."[1] [Plan at 7.3]  The bankruptcy court found the Texas Trust Code created fiduciary duties which Appellant breached. Appellant agrees that the Plan adopts the powers, duties, and responsibilities of a Trustee set forth in the code.[2]  Appellee functionally argues that the Plan adopts the Texas Trust Code in its entirety – obligations, rights, duties, and remedies.  The question before the Court is whether the bankruptcy court's findings that Appellant breached fiduciary duties owed to the Feldman Bankruptcy Estate were clearly erroneous.

As an initial matter, Appellant owed fiduciary duties to the estate regardless of whether he was serving in his capacity as a Trustee or lawyer for the estate.  A lawyer hired by a trustee in bankruptcy to do legal work for the estate, like the trustee himself, is a fiduciary of the estate.  *In re Evangeline Refining Co.*, 890 F.2d 1312, 1323 (5th Cir. 1989); *In re Imperial "400" National, Inc.*, 456 F.2d 926, 929 (3d Cir.1972); *In re Consupak, Inc.*, 87 B.R. 529, 548 (Bankr.N.D.Ill.1988).

The Texas Trust Act, as adopted in the Plan, specifically requires the Trustee to perform certain obligations.  First, the Trustee was obligated to provide accountings at the request of any beneficiary.

> (a) A beneficiary by written demand may request the trustee to deliver to each beneficiary of the trust a written statement of accounts covering all transactions since the last accounting or since the creation of the trust, whichever is later. If the trustee fails or refuses to deliver the statement within a reasonable time after the demand is made, any beneficiary of the trust may file suit to compel the trustee to deliver the statement to all beneficiaries of the trust. The court may require the trustee to deliver a written statement of account to all beneficiaries on finding that the nature of the beneficiary's interest in the trust or the effect of the administration of the trust on the beneficiary's interest is sufficient to require an accounting by the trustee. However, the trustee is not obligated or required to account to the beneficiaries of a trust more frequently than once every 12 months

---

[1]    The Texas Trust Act is codified in the Texas Trust Code found in the Texas Property Code.

[2]    However, Appellant argues that only the obligations, not the remedies, outlined in the Texas Trust Code were adopted by the Plan.

unless a more frequent accounting is required by the court.

TEXAS PROPERTY CODE §113.151 (Vernon's 2002). Although the creditors demanded accountings, Appellant failed to provide accountings which would inform the parties of the true value of the assets of the estate. Mainly, Appellant failed to properly document the liabilities of the estate. Thus, Appellant failed to cover all transactions between accountings as required by the code.

Next, the bankruptcy court found Appellant breached fiduciary duties by loaning himself funds from the estate. The TEXAS PROPERTY CODE §113.052(a)(1) (Vernon's 2002), states in relevant part that "(a) Except as provided by Subsection (b) of this section, a trustee may not lend trust funds to: (1) the trustee or an affiliate . . .." The evidence before the bankruptcy court showed that Appellant had paid himself $49,428.95 more than his records indicated he was owed. The bankruptcy court construed the payment as an advance or a loan. The bankruptcy court considered and rejected the possibility that Appellant may have paid himself a retainer. Considering Appellant's negotiated fee structure in conjunction with Appellant's billing practices, the bankruptcy court's conclusion was not clearly erroneous.

Finally, the bankruptcy court found Kaufman breached his fiduciary duties by failing to make semi-annual distributions to the creditors as required under the terms of the Plan. [See Bankr. Dkt. No. 469 at p.5] The undisputed evidence before the bankruptcy court was that Appellant had not made the semi-annual distributions as required by the Plan. In the nine years Appellant served as Trustee, he did not make one payment to the creditors. The bankruptcy court's finding, therefore, is not clearly erroneous.

Considering the record on appeal, including the hearing transcripts, the transcript of Appellant's deposition, and the exhibits introduced into the record below, the Court is convinced that the bankruptcy court's findings of fact are not clearly erroneous. Therefore, the Court **AFFIRMS** the findings of the bankruptcy court that Appellant breached fiduciary duties owed to the estate.

6

## C.   Reasonable and Necessary Fees and Disgorgement

"Absent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals." *In re Toney*, 171 B.R. 414, 415 (Bankr. S.D. Fla 1994). The fact that only $600 remain in the bankruptcy estate valued at more than $350,000 after Appellant received over $275,000 in fees and paid expenses immediately calls into doubt the reasonableness and necessity of the fees charged by and paid to Appellant.

Both the Texas Property Code and bankruptcy law authorize the bankruptcy court to deny a fee application of the Trustee and to require disgorgement of fees already paid if the Trustee has breached fiduciary duties. *See* TEXAS PROPERTY CODE §114.061 (Vernon's 2002); *Matter of Taxman Clothing Co.*, 49 F.3d 310 (7th Cir. 1995). The fact that fees have been paid under a court order is irrelevant. The law is clear that all interim awards of attorneys' fees in bankruptcy cases are tentative. *See In re Evangeline Refining Co.*, 890 F.2d at 1321; *In re Stable Mews Assocs.*, 778 F.2d 121, 123 n.3 (2d Cir.1985).

The Texas Property Code makes clear that a trustee who commits a breach of fiduciary duties may be denied compensation.

> (a) Unless the terms of the trust provide otherwise and except as provided in Subsection (b) of this section, the trustee is entitled to reasonable compensation from the trust for acting as trustee.
> (b) If the trustee commits a breach of trust, the court may in its discretion deny him all or part of his compensation.

TEXAS PROPERTY CODE §114.061 (Vernon's 2002). Thus, the bankruptcy court's finding that Appellant breached fiduciary duties was a sufficient basis for its denial of Appellant's Final Fee Application and order of disgorgement of fees already paid.

Alternatively, and contrary to Appellant's argument, *Taxman Clothing* is directly on point. The *Taxman Clothing* court held that "[f]ees obtained as a consequence of a breach of fiduciary obligation, even a nonwillful breach . . . , may be retained only if, by analogy to claims in quantum meruit, the fiduciary, notwithstanding his breach, conferred a benefit on his principal." 49 F.3d at 316. The *Taxman Clothing* court further held that "neither the trustee in bankruptcy nor the trustee's lawyer has a duty to

7

collect an asset of the debtor's estate if the cost of collection would exceed the value of the estate." *Id.* at 315.   Much like in this case, in *Taxman Clothing*, "the debtor's estate, a meager $113,000 to begin with, [was] . . . entirely consumed by the fees and expenses charged by the lawyers for the estate." *Id.* at 311.   The *Taxman Clothing* court ordered counsel to disgorge $85,000 of the $92,000 in fees he had received.   *See id.* at 316.

Moreover, the bankruptcy court has broad discretion in awarding fees and can order disgorgement as a sanction. *See Matter of Prudhomme*, 43 F.3d 1000, 1003 (5th Cir. 1995).   For example, the bankruptcy court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondisclosure. *See* 11 U.S.C. §§ 327, 1107(a) (requiring court approval before debtor-in-possession may employ counsel); *id.* § 330(a) (requiring court approval of professional fees); *Anderson v. Anderson* (*In re Anderson*), 936 F.2d 199, 204 (5th Cir. 1991) (recognizing bankruptcy court's broad discretion as court of equity to grant or deny fees and noting that attorney has no absolute right to fee award absent compliance with Code and rules); *In re Key Largo Land, Inc.*, 158 B.R. 883, 884 (Bankr. S.D. Fla. 1993) (recognizing that any payment to debtor's attorney, regardless of the source, is reviewable by the bankruptcy court).

Applying *Taxman Clothing* to this case, it is clear that Appellant did not confer a benefit on the estate that would justify paying him fees which would absorb in essence the entire estate corpus.   Appellant argues that the fees he received were for his work in developing a $1,000,000 claim on behalf of the estate against the Debtor.   Appellant argues that under the holding of *Taxman Clothing* he would be justified in spending $275,000 in fees for the development of such a large potential case.   What Appellant fails to consider and what *Taxman Clothing* clearly requires the Court to analyze is the cost of obtaining an actual judgment and the likelihood of success.   It is not enough for Appellant to say that he was pursuing a $1,000,000 claim or that he preserved another $1,000,000 in going concern value.   Appellant bears the burden of demonstrating the

benefit his work produced for the estate.[3]  The record does not demonstrate that Appellant added $275,000 (amount paid to appellant in fees) much less $451,926.11 (amount requested in Final Fee Application) in value to the bankruptcy estate.

The Court, therefore, concludes that the bankruptcy court neither clearly erred nor abused its discretion in finding that Appellant was not entitled to the fees he charged and was entitled to a reasonable and necessary fee of $50,000 plus expenses.

## V.    Other Issues Raised By Appellant

### A.    Appellant Argues Bad Faith or Gross Negligence Is Required For Denial Of Fee Application or Disgorgement

Appellant argues that §7.5 of the Plan required the bankruptcy court find his conduct in bad faith or gross negligence before it could order disgorgement.  That section of the Plan does not override the bankruptcy court's power to award or deny fees.  Read in conjunction with the other terms of the Plan, it is clear that the bankruptcy court retained jurisdiction to determine fees.

### B.    Appellant Argues *Res Judicata* Precludes This Court From Affirming The Bankruptcy Court's Decisions

Appellant also argues that *res judicata* either prevented the bankruptcy court from entering its orders or would require this Court to reverse the bankruptcy court.  For *res judicata* to apply, there must be two lawsuits, "the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases."  *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc).

Appellant first argues that a 1997 order of the bankruptcy court "denied that Appellant should be required to do any more accountings."  [Pet. at p.22]  That order

---

[3]       Considering a hypothetical $1,000,000 case with a 75% probability of recovery and a one-third contingency fee for the prosecuting attorney, the net recovery to the estate would be $525,000.  If the likelihood of success is reduced to 60%, the net recovery to the estate would only be $420,000.  No rational actor would pay $450,000 for a contingent recovery that would net approximately $450,000 when they can simply distribute the $450,000 already on hand.

simply denied CKS's motion seeking an accounting on the basis that the parties failed to appear for the hearing. [Bankr. Dkt. No. 312] It did not relieve Appellant from providing accountings to the beneficiaries upon their request. Appellant also argues that the bankruptcy court hired an accountant to prepare the accountings, relieving Appellant of that duty. [Bankr. Dkt. No. 315] To the contrary, that order simply granted Appellant's application to hire an accountant. It did not relieve Appellant of the fiduciary duty to provide accountings to the beneficiaries.

Lastly, Appellant argues that CKS's complaint about Appellant's accountings and has been heard and resolved against CKS. However, no order has been entered finding that Appellant provided adequate accountings to the beneficiaries. Rather, Appellant has been informed by letter that the United States District Court for the Southern District of Texas will not proceed with a disciplinary action against Appellant on a charge that Appellant failed to provide adequate accountings. None of these proffered bases for *res judicata* are a final adjudication on the same cause of action before the Court; therefore, *res judicata* is inapplicable and does not preclude the Court from affirming the bankruptcy court's orders

## C. Appellant Argues Equitable, Judicial, and Quasi Estoppel Precludes This Court From Affirming The Bankruptcy Court's Decisions

### 1. Equitable Estoppel

The four traditional requirements for equitable estoppel are: "(1) that the party to be stopped was aware of the facts and (2) intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts[ ] and (4) reasonably relied on the conduct of the other to his injury." *Linkous v. United States*, 142 F.3d 271, 278 (5th Cir. 1998) (citing *United States v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997)). Appellant fails to explain how equitable estoppel applies to the facts in the record. However, it is clear that Appellee, as the party to be estopped, was not aware of any fact that the Appellant did not know. It seems the reverse is true, that is, Appellant knew that the accountings he provided were not complete and he did not disclose that fact. Appellant, therefore, fails to satisfy the first and third elements.

10

### 2.    Judicial Estoppel

The judicial estoppel doctrine prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.  *See Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir.1996). Appellee never asserted contrary positions in this matter.  Appellant argues that Appellee first asserted he did too little work then asserted he did too much.  This mischaracterizes Appellee's arguments.  Appellee claims Appellant's accountings were insufficient and that Appellant overcharged for the work he actually did.  These arguments are not inconsistent. Judicial estoppel, therefore, is inapplicable to this case.

### 3.    Quasi Estoppel

The doctrine of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.  *See Stinnett v. Colorado Interstate Gas Co.*, 227 F.3d 247, 258 (5th Cir. 2000).  The Fifth Circuit analyzed the basis of the estoppel doctrine under Texas law in *Long v. Turner*, 134 F.3d 312, 318 (5th Cir.1998).  The *Long* court noted that a precise description of the core basis of estoppel is that "one who retains benefits under a transaction cannot avoid its obligations and is stopped to take an inconsistent position." *Id*. Quasi-estoppel is "inapplicable where the conduct allegedly giving rise to the estoppel is not shown to have benefitted a party sought to be stopped." *Id*. at 318.

Appellant argues that the Appellee cannot complain that the accountings were inaccurate because it was the Appellee who requested the accountings.  However, Appellant fails to demonstrate that the accountings actually benefitted the Appellee.  To the contrary, Appellant testified in his deposition that the accountings never fully disclosed the liabilities of the estate or the true balance of the estate corpus.  Quasi-estoppel simply is inapplicable to the facts on the record.

## VI.   Appellant's Motion For The Court To Prevent Mooting Of The Appeal

Appellant has filed a motion seeking an "order that, until the appeal is decided and without express permission of this Court neither the court below nor the Appellee

11

shall take any further action which might tend to discourage Appellant from pursing the instant appeal, or might tend to hinder or delay Appellant from having a law practice pending the instant appeal, or tend to hinder or delay Appellant in receiving funds necessary to pay his obligations to his creditors or to carry out his obligations to his clients." The appeal having been decided, Appellant's motion is **DENIED**.

## VII.    Admonishment To Counsel

Appellant's pleadings have prevented this Court from efficiently reviewing this case. Appellant's pleadings to this point have suffered from some of the more typical problems found in legal writing – lack of organization, lack of sufficient background for the reader, lack of editing, overstatement of propositions of law, misapplication of law, embellishment, and use of inappropriate style. While Appellant's pleadings made the resolution of this case more difficult than necessary, the Court overlooked these deficiencies as stylistic and advocacy.

In the Motion For The Court To Prevent Mooting Of The Appeal [Dkt. No. 20], Appellant has gone beyond stylistic miscalculation and entered into the realm of the unprofessional, uncivil, and hostile harangue. From the 19 pages of unsupported accusations against the bankruptcy bar, the Trustee-Appellant in this matter, the Trustee-Appellant's wife, the Trustee-Appellant's counsel, and the federal judiciary, one passage exemplifies Appellant's vituperative style.

> But people who know how the clique system works also know that they might be the ones sliced and diced in the event that the clique lawyers target them for their next fee sources. Such clients want lawyers who will not sell clients out; who will not pay bribes to win their cases; who will not succumb to blackmail, because they don't do the kinds of things people can be blackmailed about; and who will not succumb to extortion because they would rather not practice than be part of the problem, instead of part of the solution. Clients who feel they have already suffered from corruption when they come to Appellant's law office find it to be a positive sign that someone will not bend his or her values to be "in" with a particular clique. They may have millions of dollars at stake, and they already know that if they pay the first corrupt bribe, then it will never stop, and they will have to pay again the next time, and the next time; and bogus cases will continue to surface against them until their money and property are all gone. So they need someone who will not offer to pay someone off to fix the case, but who will stand up to any potential

12

corruption, and fight for an end to it.

These thinly veiled and wholly unsupported allegations of ethical misconduct and illegal conduct have no place in Appellant's motion. They do not support his position in the least. If Appellant has information of misconduct, he should file grievances with the Texas State Bar or the appropriate judicial officer. Otherwise, Appellant should simply argue the merits of his position, refraining from making uncivil, unsupported and irrelevant accusations against his colleagues and the judiciary.

## VIII.  Conclusion

For the foregoing reasons, the Court holds that the bankruptcy court's findings that Appellant breached fiduciary duties owed to the Feldman Bankruptcy Estate were not clearly erroneous and the bankruptcy court's finding that Appellant was entitled to a reasonable and necessary fee of $50,000 plus expenses was neither clearly erroneous nor an abuse of discretion. Therefore, the Court **AFFIRMS** the Memorandum Opinion And Order On Colin Kelly Kaufman's Final Fee Application [Bankr. Dkt. No. 469] and **AFFIRMS** the Final Judgment On Final Fee Application Of Colin Kelly Kaufman [Bankr. Dkt. No. 470]. Furthermore, the Court **GRANTED** Appellant's Motion For The Court To Take Judicial Notice [Dkt. No. 12]; **DENIED** Appellant's Motion For The Court To Prevent Mooting Of The Appeal [Dkt. No. 20]; and **DENIED AS MOOT** Trustee's Motion To Dismiss For Failure To State A Claim [Dkt. No. 22]

DONE in Brownsville, this 27th day of December 2002.

Hilda G. Tagle
United States District Court