United States District Court
Southern District of Texas
RECEIVED

2 6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

**JAN 1 6 2003**

Michael N. Milby, Clerk of Court

| | |
|---|---|
| IN RE: | | |
| Charles B. FELDMAN dba | District Court Civil Case # B-02-073 & 74 |
| Charles B. Feldman Investments | In Bankruptcy Case # 90-01254-B-11 |
|     Debtor | In Chapter 11 |

Font: Korinna

## COLIN KELLY KAUFMAN'S ORIGINAL
## DESIGNATION OF RECORD AND ISSUES ON APPEAL
## TO THE FIFTH CIRCUIT COURT OF APPEALS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Colin Kelly Kaufman, former plan trustee in the captioned case and

the Appellant, and for his Original Designation of Record and Issues on Appeal to the Fifth

Circuit Court of Appeals, respectfully shows the Court as follows:

### I. Designation of Issues on Appeal.

Appellant hereby designates the following issues on his Appeal to the Fifth Circuit

Court of Appeals:

1. Denied Due Process of Law. Whether the District Court denied Appellant due

process of law by:

A. Giving Discretion Where None Existed. Holding that the bankruptcy court

had discretion, notwithstanding the Plan, when the Plan, a prior federal court judgment,

had removed it, instead of giving the bankruptcy court "discretion" to approve or

disapprove any fees it chose to by

(1) Refusing to enforce the terms of the prior federal court judgment,

the bankruptcy plan, which gave any discretion which existed to the Appellant, and limited

the bankruptcy court's review to whether Appellant had committed such an abuse of

1

discretion of his own as would constitute bad faith or intentional tort;

   (2) so the proper district court standard of review was to see whether the bankruptcy court properly allowed adequate scope to the Plan Trustee's discretion, not for it to assume that the bankruptcy court had all the discretion on its own;

   (3) so it was error to hold that the Plan's general term for continuing bankruptcy court jurisdiction overruled its clear and plain specific terms upholding the Plan Trustee's decisions unless he acted in bad faith or with the state of mind of an intentional tort.

   B. <u>Treating Discretion as No Rules</u>.  Treating discretion as though it means "no rules" when

   (1) actually, the failure to apply the rules of law always automatically makes an abuse of discretion;

   (2) Appellant followed the rules of law and the bankruptcy court did not;

   (3) giving no control over discretion at all weakens the rule of law; and

   (4) the safeguarding of attorneys and clients requires more accountability on the part of the bankruptcy system, not less, especially in this part of the country;

   (5) bankruptcy courts should not have the unreviewable power to take away the constitutionally protected right of an attorney to practice law, not to mention their rights of life, liberty and the pursuit of happiness.

   (6) like any other identifiable discrete and recognizable group,

2

bankruptcy attorneys need to be able to exercise their free speech and continue their

employment and look out for their interests without being dependent on the unreviewable

favor, consent and approval of agents of the government, and this is true even if the

government agents in question are the panel bankruptcy trustees rather than other

administrative agencies;

(7) the Constitution does not countenance that the government (even

if courts, rather than administrative agencies) shall tell lawyers what kinds of cases they may

take and file, and who will be permissible defendants, and who will be permitted to make

money and who will not;

(8) people should not be forced out of practice because others find

them uncomfortable, and don't them looking at what the others are doing, and don't want

them defending things that the others want to do away with; and

(9) if something is not done here and now, the practice of law in this

part of the country will be altered for at least a generation, maybe several.

D. Discretion Does Not Justify Retroactive Invalidity.  Treating discretion as

justifying ex post facto invalidation of legal acts --

(1) when due process forbids changing the rules retroactively to make

what was legal when done illegal now;

(2) and bankruptcy lawyers and plan trustees can be expected to rely

on the rules as they existed at the time they acted;

(3) and the law of "benefit to the estate" allowed Appellant to do what

he did regardless of the subsequent complaints which Appellees have made.

E. <u>Ignoring Principles of Notice Pleading</u>.  Claiming on p. 12 that Appellant's allegations of misconduct by the opposing side were "unsupported" when the theory of federal pleading is "notice" pleading, and no hearing was offered at which Appellant was given an opportunity to support his case by evidence, nor was any evidence offered contra.

F. <u>Admonishment to Counsel</u>.  Saying on p. 12 that it was improper, sanctionable conduct for Appellant to allege that two trustees and their attorney were mistreating the bankruptcy bar, because Appellant should have complained to the state bar or some other appropriate court, when

(1) There was federal district court jurisdiction over the motion, and no such jurisdiction in the state bar;

(2) The two trustees complained of are not members of the bar, so the state bar could do nothing to them;

(3) federal policy entrusts federal district courts with the oversight of federal agencies and programs, not state court agencies such as the bar;

(4) under the Supremacy Clause, the state bar lacks power to order a lower federal court such as a bankruptcy court (or even its non-lawyer parties) to refrain from acting to moot an appeal;

(5) the state bar cannot give any effective relief, neither in the form of a money award, nor in the form of a restraining order nor an injunction, such as would be customary in cases of resort to federal courts;

(6) the Constitution guarantees in the First Amendment a right to the citizenry to petition the government for redress of grievances, and picking out a certain kind

4

of grievance as being improper for parties to assert prevents people from seeking redress for that kind of wrong, in violation of that rule;

(7) one's writing style is something that develops during years of writing, and is not something readily changed; and so ought not to be used as a reason to affect the substance of the claims one is making; and

(8) as a summary of all the things that were being done by the Boudloches, and their timing, and their motivation and their persistence, the written passage quoted might have been revealed in a hearing to be "fair comment."

G. Denying Right to Reply. Treating the motion to dismiss as accurate without giving Appellant an opportunity to reply to it, though local rules provided for Appellant to have 20 days to reply.

H. Another Opinion. Treating an opinion in a prior unrelated case (the Steen opinion) as true and proper to establish that if an attorney has been threatened with sanctions before, this will justify a later court in doing the same thing, even though

(1) the prior opinion wished to sanction Appellant for alleging a civil RICO cause of action against banks for assisting a convicted securities fraud criminal in the laundering of $6.55 million ($4 million in a single wire transfer) from the United States back to Mexico, on the grounds that no reason existed to infer that the banks had any knowledge that the defendants were laundering money;

(2) the prior opinion thought it was sanctionable for Appellant to imply or infer that either of the banks could have known they were laundering hot money, despite the fact that one of them was located in a small town (Del Rio) of less than 5,000 people,

5

where the transferee was a well-known public figure doing business as a customs broker; and despite the fact that no discovery had been had as to how well the bankers in this small town knew the transferee, who banked at their bank.

(3)the prior opinion thought it was sanctionable for Appellant to allege as evidence that the transferee was part of a criminal enterprise, that transferee's brother had been found in the Rio Grande river cut up and put into plastic bags; despite the fact that this had been reported in the paper, and Appellant had an obligation to allege that the transactions were connected with a criminal enterprise, if civil RICO was to be properly invoked, and most middle-class citizens in middle-class neighborhoods don't have such things happen to them, and Appellant proposed to offer evidence that such things do happen to persons engaged in certain kinds of criminal enterprises.

(4) where one believes that a defendant is involved with the drug trade, and that a higher level of danger is presented to the court and counsel, it is appropriate for one to mention this fact in a pleading so that the court and counsel may be alert to whether steps ought to be taken to assure that any such danger will not be realized; and the Appellant thought that very few cases threaten parties with being cut up and put in trash bags, and that the risk of harm to the court and counsel was higher than in other cases; so that the statements were appropriate disclosures which the prior opinion thought were sanctionable innuendo.

(5) if the court writing the prior opinion had really believed that Appellant's writing style was the problem (and it did not offer to sanction the two other attorneys who read the complaint before it was filed), it should have allowed the trustee to

6

substitute in another attorney to handle that case; and it refused to allow another well-known Laredo attorney to substitute in for Appellant.

(6) the effect of the opinion, along with the refusal to allow any other attorney to substitute for Appellant, was to use the sanctioning power to prevent a particular kind of case from being brought in the court, and to leave certain kinds of potential wrongs without any remedy, and to prevent even discovery of further facts about those kinds of transactions.

I. <u>Ignoring Prior Adjudication</u>.  Refusing to apply principles of res judicata and collateral estoppel (or even stare decisis) to the adjudication before Judge Kazen, when it involved the same parties, the same issues of law, the same writings, and the same issues of fact, and concluded that the evidence was insufficient to support going forward with any complaint about Appellant's accountings.

(1) <u>Res judicata should have applied to Judge Kazen's Ruling</u>.  The federal district court had previously heard all CKS's complaints about Appellant's accountings, and ruled against them, in a separate case; and

(2) <u>Judge Schmidt's Prior Opinion Was Final</u>.  Judge Schmidt also had made findings of fact and conclusions of law which were final;

(a) <u>Changed His Own Ruling re: Accountings</u>.  The bankruptcy court's own prior rulings of June 28, 2001 did not state that any insufficiency of the accountings furnished was "good cause" to remove the former plan trustee, nor that it justified giving the former plan trustee nothing for trustee's fees; and no Rule 60(b) grounds were pled nor stated for changing the prior ruling, nor was any new evidence offered, nor

was any new evidence received, on the point; and if the bankruptcy court did have a procedural right to change its mind, it was wrong on the merits to do so, because everyone was satisfied with former plan trustee's accountings until a new attorney (CKS's fifth or sixth attorney) came into the case four years after the last request for an accounting, and nine years after plan trustee began serving as such.

(b) Changed His Own Ruling re: Payment.  The bankruptcy court's own prior rulings of June 28, 2001 did not state that payment of fees in advance was "good cause" to remove the former plan trustee, nor that it justified giving the former plan trustee nothing for trustee's fees, and no Rule 60(b) grounds were pled nor stated for changing the prior ruling, nor was any new evidence offered nor was any new evidence received on the point; and if the bankruptcy court did have a procedural right to change its mind, it was wrong on the merits to do so, because the former plan trustee had earned his fees and in any case could have paid his fees in advance under the plan (as the bankruptcy court actually admitted, last sentence on p. 4 of docket #469).

(c) Not Breach.  The bankruptcy court's own prior rulings of June 28, 2001 never said that payment of fees in advance for the proposed final report would breach a fiduciary duty, and in fact said the contrary; and no Rule 60(b) grounds were pled nor stated to change the prior ruling, nor was new evidence offered or received; and

(d) Not Loans.  if the bankruptcy court did have a procedural right to change its mind; and if despite its admission in the last sentence of p. 4, Docket # 469, that "the plan did not prohibit the payment of a reasonable retainer" (i.e., the plan

8

trustee could have paid himself in advance under the plan), if even so, the bankruptcy court could still go on to make the statement, first sentence on p. 5, docket # 469, that payments for work "could be construed as loans from the trust, which would also constitute a breach of fiduciary duty"; that finding would still be error on the merits because this could not be a loan – a "loan" requires a duty or possibility of having to repay in cash or kind, and here the payment by the estate was only for work done and to be done, not for repayment in cash or kind – and furthermore the only evidence offered on what was being done or intended was offered by Appellant, who testified he earned that money, and no evidence was ever offered nor received tending to show that plan trustee ever thought any fees he got would not be fully earned by work done and to be done, nor otherwise suggesting that a "loan" was understood or intended, as this allegation was never made prior to the hearing in the bankruptcy court, nor was it tried by consent.

   J. <u>Impossibility as a Sanctionable Offense</u>.  Holding (next to last paragraph on p. 3) that a plan trustee can be penalized by a court of equity for failing to do the impossible, such as distributing money when distributions were impossible and the opposing side's expert even admitted that it was impossible, because

     (1) The judge had originally granted, and then set aside, and never finally ruled on, the motion to sanction CKS for its unlawful filing of lis pendens notices to block sale of the bankruptcy estate property, so the amount of CKS's claim was never finally fixed and known for that reason.

     (2) CKS demanded cancellation of Parkwell's claim because of the insider status of Parkwell to the Debtor; and when that was disposed of, Parkwell disposed

of its Island Moorings Marina collateral at a price sufficient to raise the possibility that

Parkwell has been fully paid and is no longer entitled to any deficiency claim, which then

made and now makes its claim amount unknown.

        K.  <u>Misstated Facts</u>.  Misstating the facts found below, or finding new facts

which were not found below, including:

        (1)  Holding, in the top paragraph on p. 6, that because Appellant

used as cash basis of accounting, instead of an accrual basis of accounting, that Appellant

thereby "failed to cover all transactions between accountings as required by the code"

(referring to the Texas Trust Code) and that statute (even assuming this situation was within

the limited extent to which it might apply in this case) contemplates cash accountings and

does not require accrual accountings; and no authority was cited contra.

        (2)  Stating, last sentence before VI on p. 11, that Appellant admitted

that any of the accountings he furnished were inaccurate, when

        (a) the record shows that everyone of them was accurate,

though all of them were on a cash basis and not an accrual basis;

        (b) Appellant disclosed on at least two occasions (the fifth and

sixth accountings) that if books had been kept on an accrual basis, there would not be

much, if any money to unsecured creditors;

        (c) Appellant never said the accountings were inaccurate –

when Appellant said that the proposed final report did not show the balance sheet, and he

felt it was wiser not to tell the debtor all that the estate administrative expenses had now

been paid, he never said that creditors were being deceived, and contrary to the district

court, the bankruptcy court expressly found that Appellant was not trying to deceive anyone.

(3) so the district judge opinion amounts to a decision that the seven accountings were misleading because they were kept on a cash basis, not on an accrual basis because

(a)  when Appellant did not disclose what attorneys fees were paid in accountings 1-6, nothing had been nor was being paid, and so nothing existed to disclose; and that statement would have been surplusage;

(b) accounting 7, the proposed final report, was not requested by a creditor, and so was not required to include lengthy discussion of something that Appellant thought creditors would be best served by not discussing, though Appellant did mention on p. 58 that he would have to give up or limit attorneys fees to give creditors a dividend.

(4)  Stating similarly, in the center paragraph on p. 3, that Appellant "admitted that he never furnishing accountings containing all of the expenditures because he did not want to tell the Debtor that the estate had no funds," when

(a) the record clearly discloses that all the first six accountings came BEFORE any of the expenditures in question were ever made, so Appellant could not possibly have admitted any such then non-existent reason for not disclosing any such then non-existent expenditures;

(b) the seventh accounting (which was not requested) was the Proposed Final Report and it stated, p. 58, that Appellant would have to give up attorneys

11

fees to let creditors to have a dividend, which was indeed true and an adequate disclosure of the ratio of expenses to income to date; and the fact that Appellant did not want to encourage Mr. Feldman to think that the estate could not afford to litigate with him was not a wrong to any creditor, particularly when Appellant was willing to litigate with Mr. Feldman;

(c) the record shows that Appellant gave the example of "King Log and King Stork" in the fifth accounting, warning that creditors might get nothing;

(d) the record shows that Appellant expressly disclosed in the sixth accounting that Appellee CKS (the then allegedly 95% claimant) should not expect the estate to produce $10,000 in funds for it – and this was before Appellee continued to run up attorneys fees with its demands and litigation; and

(e) the record shows that in response to Appellant's disclosures Appellee CKS moved the court to convert the case to Chapter 7 because of no funds to pay creditors (the bankruptcy court denied conversion), so Appellee must have understood what Appellant said.

(5)  Stating, first paragraph on p. 10, that Appellant was not relieved from the duty to make subsequent accountings, even though the record is clear that  they were not requested, and so not due under the Texas Trust Code, on which the district judge was relying, after 1997.

(6) Stating, first paragraph on p. 10, that the court's order (which specifically states that Mr. White was being hired to respond to any further requests for accountings by CKS's counsel), did not relieve Appellant of the duty to make further accountings, when

12

(a) the record is clear that accountings were not requested between June 1997 and April 27, 2001, and so under the statute relied on by the district and bankruptcy courts, no duty to make further accountings arose; and

(b) how can a district court claim that one had an "unrelieved" duty to make further accountings when the statute it relies on expressly makes a demand a prerequisite before an accounting is due, and demand was not made?

(7)  Stating, first full sentence on p. 9, that the record did not establish that Appellant benefitted the estate by $275,000, when

(a) the order confirming the plan (on p. 6, in paragraph (b), see the copy of this order, made an exhibit to the Proposed Final Report, last item under tab "Plan") expressly stated that Appellant had negotiated the $50,000 in payments from Feldman Valley Wide;

(b) the bankruptcy court ruled in the bank stock situation that Appellant created a $200,000 benefit for the estate, in his efforts in checking on Debtor, and in making sure that the Debtor sold and turned over the proceeds from the bank stock (which debtor had scheduled as being worth less than $15,000, and had not sold; but from which, even after Mr. Feldman's deductions, the estate realized over $201,000 from, when Appellant made Mr. Feldman sell it and turn over the funds);

(c) the proposed final report disclosed on p. 40 that Appellant brought into the bankruptcy estate another $26,778.10 for the real estate sales, and income from the real estate, that Mr. Feldman claimed was unsaleable during the plan term, and did not sell himself but wanted to have abandoned (plus another $615.00 in

13

attorneys fees was off-set to Mr. Bonner for his attorneys fees incurred when CKS was violating the Plan), for a total additional real estate transactions benefit of $27,393.10 for a total amount of cash brought in by Appellant despite the Debtor's efforts of $277,393.10;

(d) the district court ignored the rule of cases saying that seeing that an estate's duties are carried out is a "benefit" to the estate whether it brings in money or not, and that makes the expenses of seeing that an estate's duties are performed also "beneficial" (adding another $25,934.61 or so in cash expenses paid out by Appellant, in addition to the $277,393.10 in cash income that he brought in, so that under the "benefit of the estate" rules, Appellant's total cash benefits to the estate would total $303,327.71); and

(e) the undisputed record shows that Appellant created additional (seven-digit) benefits to the estate by allowing the going concern value of the Debtor's businesses to be preserved, and the like which the district court never mentions.

(8)  Stating in footnote 3 that Appellant should not have spent $454,000 in fees and expenses to create the million dollar claim, when actually

(a) the total fee bill was not the amount that was spent to create the million dollar claim;

(b) the total fee bill at the time Appellant completed the Proposed Final Report was for only $330,000 (slightly more than the amount Appellant had already benefitted the estate in cash by);

(c) the additional fee amounts thereafter were mostly caused by Appellee's unnecessary litigiousness, not by efforts toward creating the cause of action;

14

(d) much of the attorneys fees which had been paid out of the estate had gone for the claims of Mr. Moon, the debtor's attorney ($83,799.47, p. 53, para. B, Proposed Final Report); and

(e) no new proof was offered to, nor new analysis submitted by, the district court, to support showing how much of Appellant's attorneys fees were spent on creating the million dollar claim, and

(f) actually the fee bill shows that the amount was cerca $100,000, and the rest of the expenditures were done either PRIOR to the receipt of the data used to create the million dollar claim, or else done SUBSEQUENT to its creation.

(9)  Stating, top of p. 3, that Appellant paid himself $49,000 in advance when

(a) under the law he could charge and so could have paid himself up to the amount of his benefit to the estate, and so he did not pay "in advance" until he exceeded that benefit;

(b) it is clear that he did not pay himself in advance of the extra $277,393.10 in cash that he brought into the estate, and also clear that Appellant had another $25,934.61 in expenses included in that alleged $49,000 advance which he was entitled to be paid under the law in addition to the $277,393.10 in cash that he could get under the "benefit of the estate" rules, so that Appellant would have had to receive $303,327.71 before he could have gotten anything in "advance" and he didn't;

(c) the plan gave Appellant a right to pay himself in advance, as the bankruptcy court had noted below; and

15

(d) Appellant did not begin paying the money for his previously accrued expenses and fees until 1998, over five years after he had paid off Mr. Moon, a time period during which he charged no interest; and

(e) Appellant's $303,327.71 in cash benefits should be compared to the $349,350.72 in total amount given to the bankruptcy estate before interest – leaving a total of a mere $46,022.29 for the total net benefits contributed by Mr. Feldman without Appellant's assistance.

K.  Applying Wrong Law.  Applying state law to criticize what was done under federal law, when state law did not apply.

L.  Arbitrary and Capricious Circular Logic Denies Due Process.  Making an arbitrary and capricious, completely circular, argument, p. 7, last sentence, next-to-last paragraph, that the bankruptcy court could deny fees when it finds a breach of fiduciary duty, and yet, the only remaining alleged breach of fiduciary duty that remained after Judge Kazen's decision (and after Appellant briefed the case) was the alleged breach of fiduciary duty of charging too much fees; so that this statement amounts to saying that a court could hold that Appellant's fees could be reduced because the court decided to reduce his fees.

M.  Unsupported Accusations.  Stating, p. 12, that Appellant's complaint (that the two standing plan trustees, Mike and Cindy Boudloche who are husband and wife, are mistreating the bankruptcy bar) were unsupported accusations and unprofessional, uncivil, and hostile harangue, and should have been addressed to the appropriate court, when

(1) Appellant does not feel any personal hostility to any of these people

16

– they would be fun to hang around with at happy hour, for instance – but simply believes

he can tell that they really are mistreating his friends and colleagues in the bankruptcy bar,

for bad reasons (and as a result have a motive to mistreat him, since he stands as a defense

and support to his friends and colleagues in the bankruptcy bar); and that there really is

evidence to support this;

(2) Appellant really believes that he is not the only person to hold this

opinion, and that evidence could be introduced to support that;

(3) the federal district court really IS the appropriate court to tell that

something needs to be done, when nothing has been done about this by the bankruptcy

court; and

(4) this case really was an appropriate vehicle to raise the issue in,

because the actions of the Appellees brought their motivations into question.

2. Right to Petition. Whether it violates First Amendment guarantee of the rights of

citizens to petition the government for redress of grievances, for a court to censure or

sanction attorneys who allege wrongdoing, based on the allegedly derogatory nature of the

allegations, without giving them an opportunity to put on proof of the truth of their

allegations, as derogatory causes of action are often as worthy of redress as boring ones,

and sometimes even more in need of it.

3. Erred in Disallowing Fees. Whether the bankruptcy court erred in refusing to

approve the $454,000 fee bill submitted and in ordering a return of funds paid to the

former plan trustee, when:

A. It Was Done. The bankruptcy court found that the work was done;

17

B. <u>Reasonable Rate</u>.  The bankruptcy court found that the rate was within the range charged by bankruptcy attorneys in such cases;

C. <u>Was Agreed to</u>.  The bankruptcy court found that the former plan trustee had, when he was offered the job, agreed to payment at an hourly rate for all his work in the case;

D. <u>Intentional Tort Required</u>.  The amendment to the Plan by which the former plan trustee was appointed specifically required a finding of bad faith or such gross negligence as would constitute an intentional tort to take any money from the plan trustee; and there was neither evidence nor finding of any intentional tort;

E. <u>Finding Required to Disallow</u>.  Absent a finding of such an intentional tort on the part of the former plan trustee, he was entitled to recover for all work done on account of his service as former plan trustee, including work defending himself against the charges made by creditor CKS Asset Management, Inc. and its president, Steve Ditto; and

F. <u>Not the Major Work to Be Paid For</u>.  Simply adding up the fees spent defending against CKS's attacks shows it was cerca a fourth of the fees applied for, and so the bankruptcy court erred in stating that "Kaufman's fees largely relate to opposing requests for accountings and defending his own reputation" as stated by the bankruptcy court on p. 7 of docket # 469;

G. <u>Primary Focus</u>.  Since the creditors didn't even ask for any accountings between June, 1997 and April, 2001 (when 70% of the ten years of work was done), it is impossible that the "creditors' primary focus was obtaining accountings which Kaufman was require to provide" as stated by the bankruptcy court on p. 7 of docket # 469;

18

H. <u>Effect of Action Below</u>. It was an abuse of discretion for the bankruptcy court to deny former plan trustee's fees when the evidence showed that the natural effect of this would be to cost the bankruptcy estate the value of its $ 1 million dollar claim against the Feldmans, when that claim had not yet been liquidated.

4. <u>Equitable Estoppel</u>. Whether the bankruptcy court violated principles of equitable estoppel by going back and redetermining that Appellant violated duties to give accountings in 1997 when:

A. <u>Appellee Knew</u>. Contrary to the court's statement on p. 10 that Appellee did not know anything Appellant did not know; Appellee KNEW ITS OWN STATE OF MIND AND APPELLANT DIDN'T; and so Appellee CKS knew what accountings it got, and it knew that no expenditures had been made, and it knew that no expenditures had been disclosed; and it knew it did not demand that the accountings state that no expenditures were made, so as to comply with the Texas Trust Code; and it knew that Appellant thought it was satisfied with the accountings it got.

B. <u>Knowledge Is Intent</u>. Appellee's knowledge that Appellant thought it was happy with the accountings it got, and that Appellant was relying on that happiness as a reason not to state in writing the well-known and obvious additional disclosure that no expenditures were made,  was sufficient intent for Appellee to be bound by the accountings by equitable estoppel.

5. <u>Judicial Estoppel</u>. Whether the bankruptcy court violated principles of judicial estoppel by going back and redetermining that Appellant violated duties to give accountings in 1997 when:

19

A. <u>Appellee's Inconsistency</u>.  Appellee CKS demanded King Stork (an active trustee) instead of King Log (a passive trustee), and then objected that King Stork was too expensive.

B. <u>Can't Elevate Form over Substance</u>.  The view of the district court, that the Appellee's arguments were not inconsistent, elevates form over substance; because the substance was always that Appellee wanted more work done (whatever theory it advanced) and now it wants not to pay for work done (whatever theory it advances); and when people take inconsistent positions in a lawsuit, they usually are clever enough to try to state a technically different legal theory even if they know they switched substantive positions 180 degrees; and since the law should try not to elevate form over substance, the real test should be whether the same facts are alleged to require different, inconsistent relief, or whether the same incidents are alleged to have an opposing factual content, not whether the labels of the claims are different; and there was not a real change or difference in the facts on April 27, 2001, there was just a change in lawyers.

C. <u>When Appellee Said What</u>.  Contrary to the district court's assertion, p. 11, top paragraph, Appellee CKS did not claim that Appellant's accountings were insufficient back in 1997, when they were made; no assertion that they were insufficient was ever advanced until after April 27, 2001.  In the meantime, Appellee changed (cerca April 27, 2001) from the position that Appellant was not doing enough to make Mr. Feldman pay, into a position that Appellant did too much to make Mr. Feldman pay.

6. <u>Quasi Estoppel</u>.  Whether the bankruptcy court violated principles of quasi estoppel by going back post April 27, 2001 and redetermining that Appellant violated duties

to give accountings in 1997 when:

       A. <u>Denied Motion to Compel</u>.  Appellee allowed a final order of the bankruptcy court in 1997 (docket # 312) to be entered which denied that Appellant should be required to do any more accountings;

       B. <u>Hired Someone Else to Do Them</u>.  Appellee allowed a final order of the bankruptcy court in 1997 (docket # 315) to be entered which stated that an accountant, Al White, was being hired to do any further accountings that Appellee CKS might want done, in lieu of Appellant, and so Appellee never asked Appellant to do more accountings;

       C. <u>No Complaint</u>.  Appellee made no complaint of the quality or nature of the accountings actually furnished for nearly four years;

       D. <u>Benefit</u>.  Appellee benefitted from its conduct inducing Appellant's failure to do more work on the accountings which had been submitted to Appellee, because further accountants' and attorneys' fees were not incurred dealing with them, to reduce the dividend to unsecured creditors;

    7. <u>Applying Texas Trust Code</u>.  Whether the bankruptcy court erred in applying provisions of the Texas Trust Code relating to denying fees when a trustee is removed for cause, when:

       A. <u>Not What the Plan Said</u>.  The plan said the Texas Trust Act would apply only to the extent of the "rights, duties and responsibilities" of the plan trustee; and denying fees is not a right, a duty, nor a responsibility of the plan trustee; and Appellant should know what was intended by the provision, since Appellant was examiner in the case before the plan was confirmed, and was there when the plan was negotiated, and  knows why it

said what it said; and what it was supposed to mean.

B. Ex Post Facto Wrongdoing.  Even if the plan had completely adopted the Texas Trust Act, and so Court could have applied the Texas Trust Code provisions for removal for "cause," and even if the court's statement on June 28, 2001 (that the plan trustee did not make the kind of accountings that the Texas Trust Code contemplates) could be treated as an announcement of "cause," still the undisputed evidence shows that nobody complained about the sufficiency of these accountings at the time, though several of them were discussed in open court, and what they said was known to all, nor were there complaints about their sufficiency for several years afterward, and nobody asked any of them to be redone, nor did anyone ask for a Texas Trust Code style accounting at all until after April 27, 2001, and so any complaint had been waived by non-assertion at least from 1997 til 2001; and a waiver can be retracted only on prospective reasonable notice.

C. Claims Issues Still Not All Ruled On.  Even if the plan had completely adopted the Texas Trust Act, and so the bankruptcy court could have applied the Texas Trust Code provisions for removal for "cause," and even if the court's statement on June 28, 2001 (that the plan trustee did not make a distribution to creditors) could be treated as an announcement of "cause," still the undisputed evidence shows that a distribution to creditors was impossible because

           (1) the claims had and still have not been finally fixed, and

           (2) the administrative expenses had to be paid in full before creditors were entitled to anything, and

           (3) likewise the administrative expenses had not and still today have

22

not been fixed, as neither Al White nor Mike Boudloche's claims have been dealt with, and

(4) so that

D. What They Did Was under Federal Law, Not State.  What the bankruptcy court said on June 28, 2001 could not possibly have been meant and understood as an announcement that the Court was replacing the former plan trustee because of the provisions of the Texas Trust Code; because the order requested by the bankruptcy court from the United States Trustee's Office, submitted by it, and signed by the bankruptcy judge, said that the former plan trustee was being replaced by an amendment of the Plan (i.e., under the Bankruptcy Code).

8. Benefit of the Estate.  Whether the bankruptcy court erred in awarding only $50,000 for benefit of the estate to the former plan trustee, when:

A. $303,327.71 in Cash Benefits.  Mr. Kaufman's uncontroverted evidence was that he brought $276,780.10 in cash into the bankruptcy estate that otherwise would not have existed, plus paid $615 in Curtis Bonner's attorneys fees, and that he also paid $25,934.61 out in cash for expenses, for a total benefit to the estate of $303,327.71, and the size of the benefit is the limit on recovery for benefit of the estate, not a figure less than 17% of that amount;

B. $2 Million in Other Benefits.  The uncontroverted evidence of Mr. Kaufman was that he had given the estate over two million dollars in other benefits; and

C. What about Plan Trustee Service?  The award for benefit to the estate did not give Mr. Kaufman anything at all for his service as plan trustee.

9. Expenses of the Trust.  Whether the bankruptcy court erred in ordering sanctions

23

for non-disclosure because its ruling that, "None of the accountings included information which would alert beneficiaries that the expenses of the trust might exceed its corpus" when:

        A. <u>Not a Trust</u>. It was not a trust, it was a bankruptcy estate;

        B. <u>King Log vs. King Stork</u>. The former plan trustee's Fifth Accounting discussed King Log and King Stork, and how CKS's demands for work were going to eat up in administrative expenses the entire amount of funds generated under the Plan;

        C. <u>Lucky to Get $10,000</u>. The former plan trustee's Sixth Accounting disclosed that CKS, at a time when it was claiming to be 90-95% of the creditors would be lucky to get $10,000 in total on a final distribution;

        D. <u>Moved to Convert</u>. CKS moved in response to the Sixth Accounting to convert the case to Chapter 7;

        E. <u>Hired CPA</u>. Al White, a CPA, was specifically hired to give CKS (or any other creditor) whatever accounting-type information it might ever be interested in having, and CKS did not ask Al White for any more information along that line;

        F. <u>No Creditor Asked</u>. No creditor asked for another accounting after the 1997 orders until the proposed final report was filed in April, 2001; and

        G. <u>The Other Million Dollars</u>. There was still a million dollar claim against the Feldmans which former plan trustee was prosecuting, and would have prosecuted and obtained funds for creditors but for the creditors actions which prevented him.

        (1) And the Feldmans could have afforded to pay the $1 million; documents produced in summer of 2001 showed that he had $700,000 in cash hidden in

one of the Feldman entities at the time the plan was confirmed, see the adversary

complaint and its exhibits.

(2) Little as the promises were, the Feldmans still did not pay all the

payments they promised under the plan.

(3) Mr. Feldman was a millionaire bankrupt, and is trying to leave the

bankruptcy as a millionaire bankrupt, discharging several million dollars of debt for the

promise of a pittance, which then went unpaid, though he was adding new Feldman Valley

Wide liquor stores during the plan term, and since; and yet he and Mr. Boudloche are trying

to limit all his liability for administrative expenses to $25,000 by means of settling out the

adversary for the million dollar causes of action for that.

II. Designation of Record on Appeal.

Appellant Colin Kelly Kaufman designates the following items as part of the record on the Appeal to

the Fifth Circuit:

6. Dockets. The dockets of Case # 90-02154-B-11 (main case) and the adversary proceeding,
Kaufman v. Feldman, # 01-2090-B.

7. 07/27/90 -- Docket #5: Schedule of Assets and Liabilities *{Used as Exhibit A(schd) to Plan trustee's
final report #383 - filed on April 17, 2001 & Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01
& to Richard Russell w/State Bar — dated 08/31/01}*

8. 07/27/90 — Docket #6: Statement of Financial Affairs for a Debtor engaged in business. *{Used as
Exhibit A(stfn) to Plan trustee's final report #383 - filed on April 17, 2001 & Hon. Keith P. Ellison, Esq., U.S.
District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

9. 01/28/91 — Docket #40: Plan of Reorganization of Charles B. Feldman d/b/a Charles B. Feldman
Investments

10. 01/28/91 — Docket #41: Disclosure Statement of Charles B. Feldman

11. 12/06/91 — Docket #130: First Amended Disclosure Statement

12. 12/06/91 — Docket #131: First Amended Plan of Reorganization

13. 09/21/92 — Docket #176: Order Confirming Plan

14. 09/24/92 — Docket #178: Modification to First Plan of Reorganization *{Used as Exhibit A to Fee Application #458 - filed on 02/08/02 & Used as Exhibit 3(3c)(A) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

15. 10/05/92 — Docket #181: Order entered. Post confirmation order and notice

16. 10/29/92 — Docket #185: Motion for extension of time to file objection to claims — filed by debtor C/S; no notice provisions; order enclosed *{Used as Exhibit to 3(3d) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

17. 12/21/92 — Docket #195: Plan trustee's notice of and motion to approve 1st quarterly distribution *{Used as Exhibit M(m) to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

18. 01/09/95 — Docket #220: Colin K. Kaufman's original response to court's order to show cause, and first post-confirmation application for leave to pay Mr. Moon and others additional sums. *{Used as Exhibit M(m) to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

19. 03/20/95 — Docket #222: Notice of appearance and request for notice from Steven A. Ditto for CKS Asset Management, Inc.

20. 03/20/95 — Docket #223: Notice of assignment of claim (CKS Asset Management is substituted for FDIC).

21. 05/03/95 —/docket #224: order entered. Re: #223 CKS Asset Management, Inc. is substituted in place of FDIC.

22. 07/03/95 — docket #225: motion for order to show cause why CKS Management should not be held in contempt for violation of 11 USC Sec. 1141(c) & (d).

23. 07/18/95 — docket #226: supplement to #225 motion for order to show cause.

24. 09/06/95 — docket #232: courtroom minutes — hearing held 09/06/95 re: #225 M/show cause why CKS mgmt. Should not be held in contempt. Arguments heard and no appearance by CKS; court orders CKS to remove notices within 10 days. CKS is further ordered to pay attorneys' fees and expenses in the amount of $4,600.00 of Charles Moon and $3,000.00 of Colin Kaufman. Order to be submitted by Charles Moon within 10 days.

25. 09/21/95 — docket #233: order entered parties notified. Re: #232. Motion granted. Order Imposing sanctions against CKS Asset Management, Inc. for violation of confirmation order. CKS to immediately take steps to release all abstracts of judgment, assignment of judgments and similar documents. All releases to be filed no later than 10 days. CKS shall pay to debtor the sum of $4,600.00 attorneys' fees and expenses. C. Kaufman authorized to withhold sums which might have been paid to CKS until the $7,600.00 awarded in this Order has been fully paid.

26. 03/01/96 — docket #234: motion of CKS Asset Management, Inc. to obtain relief from order imposing sanctions, order enclosed.

27. 06/12/96 — docket #242: trancript of show cause hearing held September 6, 1995

28. 08/23/96 — docket #250: motion of CKS Asset Mgmt. To enforce and implement confirmed plan and to compel plan trustee to file an accounting and to perform his duties C/S; 20 day notice; order enclosed (Newsom)

29. 09/09/96 — docket #252: plan trustee response to CKS's motion to compel re: #250

30. 09/30/96 — docket #258: courtroom minutes — hearing held on 09/30/96 re: #234 motion of CKS Asset Management, Inc. to obtain relief from Order imposing sanctions. Hearing commenced/concluded. Exhibits offered and admitted. Witness sworn and questioned. Arguments presented. The Court will reconsider the order imposing sanctions.

31. 12/20/96 — docket #261: order entered. Re: #250 - denying motion of CKS Asset Management to enforce and implement confirmed plan and to compel plan trustee to file an accounting (failure to prosecute).

32. 04/16/97 — docket #272: plan trustee's fifth report — filed by Colin Kelly Kaufman *{Used as Exhibit M(e) to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

33. 05/13/97 — docket #275: plan trustee's sixth report and partly unopposed motion to extend plan term to January 31. 1998: order enclosed. *{Used as Exhibit M(f) to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

34. 06/02/97 — docket #278: response of CKS Asset Mgmt. To plan trustee's motion to extend plan

term re: #275. *{Used as Exhibit M(e) to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

35. 06/04/97 — docket #279: notice of hearing set 07/16/97 @ 9:00 am McAllen Re: #275 Plan trustee's sixth report and partly unopposed motion to extend plan term to January 31, 1998.

36. 06/27/97 — docket #281: plan trustee's response to CK's motion to convert (Kaufman). *{Used as Exhibit M(d) to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

37. 07/16/97 — docket #284: courtroom minutes — hearing held on 07/16/97. Re #275 plan trustee's third unopposed motion to extend plan term to January 31, 1998. Hearing previously continued to 08/20/97 @ 9:00 am McAllen.

38. 08/13/97 — docket #287: plant trustee's original partly unopposed motion to employ accountant — filed by Colin K. Kaufman; order enclosed. *{Used as Exhibit 1(1c) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

39. 08/18/97 — docket #290: objection to claim of Parkwell Investments, Inc. filed by CKS Asset Management, Inc.

40. 09/04/97 — docket #299: response to objection to claim of Parkwell Investments, Inc. - filed by Parkwell Investments, Inc. (Simank).

41. 09/18/97 — docket #306: courtroom minutes: hearing held 09/18/97 Re: #275 plan trustee's sixth report and partly unopposed motion to extend plan term to January 31, 1998. Hearing commenced/concluded. The Court ruled that the debtor will turnover property to the plan trustee to be distributed and sold. Exhibits offered.

42. 09/25/97 — docket #312: order entered. Parties notified. Re:#150; denying CKS Asset Management's Motion to compel and enforce (failure to prosecute).

43. 10/08/97 — docket #314: courtroom minutes: hearing held 10/08/97 Re: #287 plan trustee's motion to employ accountant. Motion granted. Unopposed order submitted and assigned.

44. 10/15/97 — docket #315: order entered. Unopposed order granting plan trustee's application for employment of accountant (Al White) - Granted. *{Used as Exhibit 1(1d) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

45. 02/27/98 — docket #331: response to motion of CKS Mgmt. To withdraw objection to claim of Parkwell Investments, Inc. (Simank)

46. 03/19/98 — docket #337: transcript of hearing held 09/18/97.

47. 01/22/01 — docket #363 motion by plant trustee Colin Kelly Kaufman to reopen case.

48. 02/05/01 — docket #364 response by creditor Parkwell Investments, Inc. to motion to reopen case by Colin Kelly Kaufman.

49. 02/09/01 — docket #365 order to set hearing re: [363-1] motion to reopen case by Colin Kelly Kaufman scheduled for 9:00 am 03/07/01 in Brownsville.

50. 03/08/01 — docket #376 motion by trustee Colin Kelly Kaufman to sell free and clear of liens hearing set for 9:00 am 03/14/01 in Corpus Christi.

51. 03/19/01 — docket #378 objection by creditor CKS Asset Management to [376-1] motion to sell free and clear of liens by Colin Kelly Kaufman.

52. 03/27/01 — docket #381 order to set hearing re: [378-1] objection to expedited sale by CKS Asset Mgmt. scheduled for 9:00 am 05/09/01 in Brownsville.

53. 04/09/01 — docket #382 motion by trustee Colin Kelly Kaufman to extend time to file final report.

54. 04/18/01 — docket #383 plan trustee's proposed report of distribution. *{Used as Exhibit M(b)[w/o exhibits] to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01 & Exhibit A[w/exhibits]}*

**Exhibit List to Plan Trustee's Proposed Final Report**

| | | |
|---|---|---|
| 1. | Exhibit | (Filed) |
| 2. | Exhibit STFN | (Filed) |
| 3. | Exhibit SCHD | (Filed) |
| 4. | Exhibit INVS | (Filed) |
| 5. | Exhibit DCKT | (Filed) |
| 6. | Exhibit PLAN | (Filed) |
| 7. | Exhibit TAXR - (Includes 1992 - 1997) | (Filed) |
| | a. FREI | |
| | b. Feldman Rentals | |
| | c. Clara Feldman Properties | |
| 8. | Exhibit ALWH | (Filed & Mailed) |

55. 04/18/01 — docket #384 notice of corrected exhibits re: [383-1] distribution report. *{Used as Exhibit B to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar*

— dated 08/31/01}

56. 04/24/01 — docket #385 response by creditor CKS Asset Mgmt. To [383-1] proposed distribution report.

57. 04/25/01 — docket #387 motion by creditor CKS Asset Mgmt. To substitute attorney: Matthew A. Rosenstein for old attorney: R. Kirk Newson.

58. 04/25/01 — docket #388 motion by Matthew A. Rosenstein for creditor CKS Asset Mgmt. To expedite hearing re: [386-1] motion to extend time to respond to plan trustee's final report by CKS Asset Mgmt., [387-1] motion to substitute attorney: Matthew A. Rosenstein for old attorney: R. Kirk Newsom by CKS Asset Mgmt.

59. 04/26/01 — docket #386 motion by creditor CKS Asset Mgmt. To extend time to respond to plan trustee's final report.

60. 04/26/01 — docket #389 order granting [388-1] motion to expedite hearing re: [386-1] motion to extend time to respond to plan trustee's final report by CKS Asset Mgmt., [387-1] motion to substitute attorney: Matthew A. Rosenstein for old attorney: R. Kirk Newsom by CKS Asset Mgmt. Hearing set to 9:00am 04/27/01 in Corpus Christi.

61. 04/27/01 — docket #390 order to set hearing re: [383-1] plan trustee's proposed final report scheduled for 9:00am 06/06/01 in Brownsville.

62. 04/27/01 — docket #391 hearing held re: [386-1] motion to extend time to respond to plan trustee's final report by CKS Asset Mgmt.

63. 04/27/01 — docket #392 hearing held re: 387-1] motion to substitute attorney: Matthew A. Rosenstein for old attorney: R. Kirk Newsom by CKS Asset Mgmt.

64. 04/27/01 — docket #393 order granting motion to extend time to resond to plan trustee's final report by CKS Asset Mgmt. Time extended to May 31, 2001.

65. 04/27/01 — docket #394 plan trustee's notice of mooted hearing.

66. 04/30/01 — docket #395 certificate of service by trustee Colin Kelly Kaufman of [390-1] order setting hearing on plan trustee's proposed final report.

67. 05/16/01 — docket #396 opposed expedited motion by plan trustee Colin Kelly Kaufman for protective order.

68. 05/16/01 — docket #397 motion by Plan trustee Colin Kelly Kaufman to expedite hearing re: motion for protective order by CKK.

69. 05/17/02 — docket #398 response by creditor CKS Asset Mgmt. In opposition to motion for protective order by CKK.

70. 05/17/01 — docket #399 response by trustee CKK to response by CKS Asset Mgmt. On motion for protective order filed by CKK.

71. 05/18/01 — docket #401 hearing held re: opposed expedited motion for protective order by CKK. Motion denied. Order to be submitted under green sheet by Attorney Rosenstein.

72. 05/18/01 — docket #407 hearing held re: motion for protective order by CKK. Motion denied order to be submitted.

73. 05/21/01 — docket #400 order denying original opposed expedited motion for protective order by CKK.

74. 05/23/01 — docket #402 Order Granting [382-1] Motion To Extend Time To File Final Report by Colin Kelly Kaufman.

75. 5/25/01 -- docket #403  Motion By Matthew A Rosenstein for Creditor CKS Asset Management To Continue Hearing Re: [383-1] Chapter 11 Plan Trustee's "Distribution Report" .

76. 5/25/01 -- docket #404  Motion By Matthew A Rosenstein for Creditor CKS Asset Management To Expedite Hearing Re: ( [403-1] Motion To Continue Hearing Re: [383-1] Chapter 11 Plan Trustee's "Distribution Report" by Matthew A. Rosenstein ).

77. 5/29/01 -- docket #408  Second Amended [383-1] Proposed Final Report of Distribution.  Filed by: Trustee Colin Kelly Kaufman. *{Used as Exhibit F to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

78. 5/29/01 -- docket #409  Response By Trustee Colin Kelly Kaufman To [385-1] Response by CKS Asset Management to Plan Trustee's Proposed Final Report and Motion for CKS Asset Management, Inc., to Compel Plan Trustee to Perform an Independent Accounting Prepatory to Filing a Final Report. *{Used as Exhibit E to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

79. 5/30/01 -- docket #405  Order Granting [403-1] Motion To Continue Hearing Re: [383-1] Chapter 11 Plan Trustee's "Distribution Report" by Matthew A Rosenstein Hearing set To 9:00 6/22/01 at 1133 N Shoreline Corpus Christi . Parties Notified.

80. 5/30/01 -- docket #406 Order Granting [404-1] Motion To Expedite Hearing Re: ([403-1] Motion To Continue Hearing Re: [383-1] Chapter 11 Plan Trustee's "Distribution Report" by Matthew A Rosenstein ) by Matthew A Rosenstein Hearing set To 9:00 5/29/01 at 1133 N Shoreline Corpus Christi .

81. 5/30/01 -- docket #410  Objection By Creditor Parkwell Investments Inc To [383-1] Trustee's Proposed Final Distribution Report . cc: TA (vr) [EOD 06/01/01] [90-1254]

82. 5/30/01 -- docket #411  Supplement RE: [385-1] Response in Opposition to Plan Trustee's Proposed Final Report by CKS Asset Management. cc: TA (vr) [EOD 06/01/01] [90-1254]

83. 5/30/01 -- docket #412  Motion by Creditor CKS Asset Management for Removal of Trustee, For Disgorgement of Unreasonable Fees Taken Without Court Approval and for Damages to Estate for Breach of Fiduciary Duty and Misapplication of Funds. m/d 6/22/01 (vr) [EOD 06/01/01] [90-1254] *{Used as Exhibit D to  Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

84. 6/5/01 -- docket #413 Opposed Expedited Motion By Trustee Colin Kelly Kaufman To Compel Production of Documents . Hearing set for 9:00 6/8/01 at 1133 N Shoreline Corpus Christi to lg (swm) [EOD 06/06/01] [90-1254] *{Used as Exhibit G to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

85. 6/5/01 -- docket #414 Motion By Trustee Colin Kelly Kaufman To Expedite Hearing Re: ([413-1] Motion To Compel Production of Documents by Colin Kelly Kaufman ). to lg (swm) [EOD 06/06/01] [90-1254] *{Used as Exhibit G to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

86. 6/7/01 -- docket #415 Order Granting [414-1] Motion To Expedite Hearing Re: ( [413-1]Motion To Compel Production of Documents by Colin Kelly Kaufman ) Hearing set for 9:00 6/8/01 at 1133 N Shoreline CorpusChristi . Parties Notified. (swm) [EOD 06/07/01] [90-1254]

87. 6/7/01 -- docket #416 Motion By Creditor CKS Asset Management To Consolidate Hearing on Trustee's Proposed Final Report With CKS Asset Management, Inc's Motion For Removal Of Trustee . to lg (swm) [EOD 06/07/01] [90-1254]

88. 6/7/01 -- docket #417 Motion By Matthew A Rosenstein for Creditor CKS Asset Management To Expedite Hearing Re: ( [416-1] Motion To Consolidate Hearing on Trustee's Proposed Final Report With CKS Asset Management, Inc's Motion For Removal Of Trustee by CKS Asset Management ) . to lg (swm) [EOD 06/07/01] [90-1254]

89. 6/7/01 -- docket #418  Order Granting [417-1] Motion To Expedite Hearing Re: ( [416-1] Motion To Consolidate Hearing on Trustee's Proposed Final Report With CKS  Asset Management, Inc's Motion For Removal Of Trustee by CKS Asset Management ) Hearing set for 9:00 6/11/01 at 1133 N Shoreline Corpus Christi . Parties Notified. (swm) [EOD 06/07/01] [90-1254]

90. 6/8/01 -- docket #419 Hearing Re: [416-1] Motion To Consolidate Hearing on Trustee's Proposed Final Report With CKS Asset Management, Inc's Motion For Removal Of Trustee by CKS Asset Management continued by agreement to 9:00 6/22/01 at 1133 N Shoreline Corpus Christi (swm) [EOD 06/08/01] [90-1254]

91. 6/8/01 -- docket # 420 Hearing Re: [413-1] Motion To Compel Production of Documents by Colin Kelly Kaufman continued to 9:00 6/22/01 at 1133 N Shoreline Corpus Christi. Arguments presented. Tax returns to be provided by 6/13/01. (swm) [EOD 06/08/01] [90-1254]

92. 6/8/01 -- docket #421  Order Granting in Part [413-1] Motion To Compel Production of  Documents by Colin Kelly Kaufman And Continuing Hearing Re: [413-1] Motion To Compel Production of Documents by Colin Kelly Kaufman. Hearing reset for 9:00 6/22/01 at 1133 N Shoreline Corpus Christi . Parties Notified.  (swm) [EOD 06/08/01] [90-1254]

93. 6/8/01 -- docket #422  Order to Set Hearing RE: [408-1] Second Amended To Proposed Final Report by Colin Kelly Kaufman scheduled for 9:00 6/22/01 at 1133 N Shoreline Corpus Christi Parties Notified. (swm) [EOD 06/08/01] [90-1254]

94. 6/11/01 -- docket #423 Objection By Creditor CKS Asset Management To [408-1] Second Amendment to Proposed Final Report by Colin Kelly Kaufman . (swm) [EOD 06/12/01] [90-1254]

95. 6/13/01 -- docket # 424  Opposed Expedited Motion By Trustee Colin Kelly Kaufman to Cancel CKS's Claim, Or Alternatively To Assign CKS's Claim , Or Set-Off Its Potential Dividend To Plan Trustee To Secure Fees (swm) [EOD 06/13/01] [90-1254] *{Used as Exhibit H to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

96. 6/13/01 -- docket # 425  Motion By Trustee Colin Kelly Kaufman To Expedite Hearing Re: ( [424-1] Motion to Cancel CKS's Claim by Colin Kelly Kaufman, [424-2] Motion To Assign CKS's Claim by Colin Kelly Kaufman, [424-3] Motion Set-Off Its Potential Dividend To Plan Trustee by Colin Kelly Kaufman ) to lg. (swm) [EOD 06/13/01] [90-1254] *{Used as Exhibit I to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

33

97. 6/13/01 -- docket # 426  Response By Trustee Colin Kelly Kaufman To [412-1] Motion for Removal of Trustee, For Disgorgement of Unreasonable Fees Taken Without Court Approval and for Damages to Estate for Breach of Fiduciary Duty and Misapplication of Funds bv CKS Asset Management . to 1g (swm) [EOD 06/13/01] [90-1254] *{Used as Exhibit H to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

98. 6/14/01 -- docket # 427  Order to Set Hearing RE: [412-1] Motion for Removal of Trustee, For Disgorgement of Unreasonable Fees Taken Without Court Approval and for Damages to Estate for Breach of Fiduciary Duty and Misapplication of Funds by CKS Asset Management scheduled for 9:00 6/22/01 at 1133 N Shoreline Corpus Christi Parties Notified. (swm) [EOD 06/14/01] [90-1254]

99. 6/14/01  -- docket # 428  Order Granting [425-1] Motion To Expedite Hearing Re: (424-1] Motion to Cancel CKS's Claim by Colin Kelly Kaufman, [424-2] Motion To Assign CKS's Claim by Colin Kelly Kaufman, [424-3] Motion Set-Off Its Potential Dividend To Plan Trustee To Secure Fees by Colin Kelly Kaufman ) Hearings set for 9:00 6/22/01 at 1133 N Shoreline Corpus Christi Parties Notified. (swm) [EOD 06/14/01] [90-1254]

100. 6/18/01 -- docket # 429  Response By Creditor Parkwell Investments Inc To [412-1] Motion for Removal of Trustee, For Disgorgement of Unreasonable Fees Taken Without Court Approval and for Damages to Estate for Breach of Fiduciary Duty and Misapplication of Funds by CKS Asset Management . (swm) [EOD 06/18/01] [90-1254]

101. 6/18/01-- Complaint (01-2090) Colin Kelly Kaufman vs. Charles B Feldman.  NOS 454 Recover Money/Property . ( Filing Fee $ r 150.00 Receipt # 952513) (ih) [EOD 06/21/01] [01-2090] *{Used as Exhibit J to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01 }*

102. 6/22/01  -- docket # 430  Objection By Debtor Charles B Feldman To [408-1] Amended Trustee's Final Report by Colin Kelly Kaufman . (swm) [EOD 06/22/01] [90-1254]

103. 6/22/01 -- docket # 431  Hearing Re: [408-1] Trustee's Second Amended Proposed Final Report of Distribution by Colin Kelly Kaufman continued to 6/27/01 by telephone conference. Parties will be advised as to time. (swm) [EOD 06/25/01] [90-1254]

104. 6/22/01  -- docket # 432  Hearing Re: [412-1] Motion for Removal of Trustee, For Disgorgement of Unreasonable Fees Taken Without Court Approval and for Damages to Estate for Breach of Fiduciary Duty and Misapplication of Funds by CKS Asset Management continued to 6/27/01 by telephone conference. Parties will be advised as to time. (swm) [EOD 06/25/01] [90-1254]

34

105. 6/22/01 -- docket #433  Creditor CKS Asset Management Witness and Exhibit List (swm) [EOD 06/25/01] [90-1254]

106. 6/22/01 -- docket # 434  Trustee Colin Kelly Kaufman Witness and Exhibit List (swm) [EOD 06/25/01] [90-1254]

107. 6/22/01 -- docket # 435  Motion By Matthew A Rosenstein for Creditor CKS Asset Management To Continue Hearing Re: [424-1] Motion to Cancel CKS's Claim by Colin Kelly Kaufman, [424-2] Motion To Assign CKS's Claim by Colin Kelly Kaufman, [424-3] Motion Set-Off Its Potential Dividend To Plan Trustee To Secure Fees by Colin Kelly Kaufman to lg (swm) [EOD 06/25/01] [90-1254]

108. 6/22/01 -- docket # 436  Response By Creditor CKS Asset Management To [424-1] Motion to Cancel CKS's Claim by Colin Kelly Kaufman, [424-2] Motion To Assign CKS's claim by Colin Kelly Kaufman, [424-3] Motion Set-Off Its Potential Dividend To Plan Trustee To Secure Fees by Colin Kelly Kaufman . (swm) [EOD 06/25/01] [90-1254]

109. 6/22/01 -- docket # 437  Proposed Findings of Fact and Conclusions of Law Re: [408-1] Second Amended Final Report by Colin Kelly Kaufman . Parties Notified. (swm) [EOD 06/25/01] [90-1254]

110. 6/26/01 -- docket # 438  Status report filed by Letty Garza. Closing arguments on #408 and 412 set for 6/27/01 2:00 pm. Rosenstein will notify all parties. (swm) [EOD 06/26/01] [90-1254]

111. 6/26/01-- Hearing On Final Arguments Re: [408-1] Amended Final Report by Colin Kelly Kaufman [412-1] Motion for Removal of Trustee, For Disgorgement of Unreasonable Fees Taken Without Court Approval and for Damages to Estate for Breach of Fiduciary Duty and Misapplication of Funds by CKS Asset Management scheduled for 2:00 6/27/01 at 1133 N Shoreline Corpus Christi (swm) [EOD 06/26/01] [90-1254]

112. 6/27/01 -- docket # 439  Plan Trustee's Proposed Findings of Fact and Conclusions of Law Re: [383-1] Distribution Report, [408-1] Second Amended Distribution Report and [412-1] Motion for Removal of Trustee, For Disgorgement of Unreasonable Fees Taken Without Court Approval and for Damages to Estate for Breach of Fiduciary Duty and Misapplication of Funds by CKS Asset Management . (swm) [EOD 06/27/01] [90-1254] *{Used as Exhibit L to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

113. 6/27/01 -- docket # 440  Hearing Re: [412-1] Motion for Removal of Trustee, For Disgorgement of Unreasonable Fees Taken Without Court Approval and for Damages to Estate for Breach of Fiduciary Duty and Misapplication of Funds by CKS Asset Management. Final arguments presented. Copy of relevant docket entries to be submitted by the trustee to court by

9:00 a.m. on 6/28/01. Copies of all accounting to be submitted by trustee to Court by 9:00 on 6/28/01. Court will rule at 3:00 6/28/01 at 1133 N Shoreline Corpus Christi (swm) [EOD 6/28/01] [90-1254]

114.  6/28/01 -- docket # 441  Trustee Colin Kelly Kaufman's Copies of Documents Relating to Plan Trustee's Accountings (swm) [EOD 06/29/01] [90-1254] *{Used as Exhibit M to Hon. Keith P. Ellison, U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar -- dated 08/31/01 & as Exhibit 5 to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

<u>List of Enclosures</u>

A.    Exhibits to 2nd Amendment to Plan Trustee's Proposed Final Report (docket #408):
         Feldman Estate Payments Corrected Summary
         Feldman Estate Deposit Summary (Frost IOLTA Account)
         Feldman Claims Register

B.    Plan Trustee's Proposed Final Report (docket #383)

C.    Plan Trustee's Seventh Report (COS says served "on the persons who appeared in court on this matter on September 18, 1997 - Plan Trustee and SKK gave copy to CKS Asset Mgmt. after court)

D.    Plan Trustee's Response to CKS' Motion to Convert (docket #281)

E.    Response of CKS Asset Management, Inc. to Plan Trustee's Motion to Extend Plan Term - May 29, 1997 (docket #278) - (CKS's Motion to Convert to Chapter 7)

F.    Plan Trustee's Sixth Report and Partly Unopposed Motion to Extend Plan Term to January 31, 1998 (docket #275)

G.    Plan Trustee's Fifth Report - April 16, 1997 (docket #272)

H.    Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (4th Accounting) (handed out in court)

I.    Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (3rd Accounting) (handed out in court)

J.    Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (2nd Accounting) (handed out in court)

K.    Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (1st Accounting) (mailed out on September 20, 1995)

L.    Notice of Assignment of Claim (CKS Asset Mgmt. is substituted for FDIC) (S. Ditto m/d 04/29/95) (docket #223) - filed March 20, 1995

M.    Colin K. Kaufman's Original Response to Court's Order to Show Cause, and First Post-Confirmation Application for Leave to Pay Mr. Moon and Others Additional Sums  - January 9, 1995 (docket #220)

N.    Plan Trustee's Notice of and Motion to Approve 1st Quarterly Distribution - December 21, 1992 (docket #197)

115.  6/28/01 -- docket # 442  Hearing Held Re: [412-1] Motion for Removal of Trustee,

For Disgorgement of Unreasonable Fees Taken Without Court Approval and for Damages to
Estate for Breach of Fiduciary Duty and Misapplication of Funds by CKS Asset Management .
Matters in this case that are still under advisement were clarified on record. Plan contemplated
fee applications were not required. Trustee would not have to file fee applications to be paid.
Trustee to be paid at lawyer rate. Fiduciary duty is owed by trustee to plan. Duty also requires
that fees and expenses should not exceed the estate assets. Detailed clarification of case and
Court's review of all matters and germane docket entries were stated on record. No creedence to
Court that trustee was obscuring or hiding any facts. Edwards v Hollaman was cited. Adequate
accounting was not given in this case. Payments were made by trustee to trustee before services
were rendered. Substantial matters are yet to be heard in this case. Outstanding issues were
clarified on record. New trustee should be appointed to continue this case. Court will withhold at
this time ruling on fees yet due to plan trustee. (swm) [EOD 06/29/01] [90-1254]

116. 6/29/01 -- docket # 443  Order Granting in Part [412-1] Motion for Removal of
Trustee, For Disgorgement of Unreasonable Fees Taken Without Court Approval and for
Damages to Estate for Breach of Fiduciary Duty and Misapplication of Funds by CKS Asset
Management . Colin Kaufman is removed as Plan Trustee. The United States Trustee is ordered
to appoint a Successor Trustee. Parties Notified. (swm) [EOD 06/29/01] [90-1254] *{Used as
Exhibit 4(4e)to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United
States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02 which is used as an
exhibit from docket #467 labeled CKS 24}*

117. 7/3/01 -- docket # 444  Transcript of Hearing Held on 6/28/01 (swm) [EOD
7/03/01] [90-1254]*{Used as Exhibit N to Hon. Keith P. Ellison, Esq., U.S. District Judge -- dated 08/13/01
& to Richard Russell w/State Bar — dated 08/31/01 - see hearing held docket #442}*

118. 7/3/01 -- docket # 445  Motion by Creditor CKS Asset Management For
Clarification and Correction Of Order Removing Plan Trustee md 7/26 (swm) [EOD 07/05/01]
[90-1254]

119. 7/23/01 -- docket # 446  Response By Trustee Colin Kelly Kaufman To [445-1]
Motion For Clarification and Correction Of Order Removing Plan Trustee by CKS Asset
Management . to lg (swm) [EOD 07/24/01] [90-1254] *{Used as Exhibit O to Hon. Keith P. Ellison,
Esq., U.S. District Judge -- dated 08/13/01 & to Richard Russell w/State Bar — dated 08/31/01}*

120. 7/24/01 -- docket # 447  Motion by US Trustee To Further Modify Modification To
First Amended Plan Confirmed By Order Dated October 5, 1992 md 8/17 (swm) [EOD 7/25/01]
[90-1254]

121. 7/24/01 -- docket # 448  Post-Trial Brief By Matthew A Rosenstein for Creditor
CKS Asset Management In Support Of [412-1] Disgorgement of Unreasonable Fees Taken

Without Court Approval (swm) [EOD 07/25/01] [90-1254]

122. 7/26/01 -- docket # 449  Order to Set Hearing RE: [445-1] Motion For Clarification and Correction Of Order Removing Plan Trustee by CKS Asset Management scheduled for 9:00 9/12/01 at 600 E Harrison, Brownsville Parties Notified. (swm) [EOD 07/26/01] [90-1254]

123. 7/30/01 -- docket # 450  Certificate Of Service By Matthew A Rosenstein for Creditor CKS Asset Management Of [449-1] Order Setting Hearing on Motion for Clarification and Correction of Order Removing Plan Trustee. (swm) [EOD 07/31/01] [90-1254]

124. 8/21/01 -- docket # 451  Order Granting [447-1] Motion To Further Modify Modification To First Amended Plan Confirmed By Order Dated October 5, 1992 by US Trustee D Michael Boudloche is named as Plan Trustee. Parties Notified. (swm) [EOD 08/21/01][90-1254]

125. 9/12/01 -- docket # 452  Trustee Colin Kelly Kaufman's Outline of Arguments on September 12, 2001. (swm) [EOD 09/13/01] [90-1254]

126. 9/12/01 -- docket # 453  Hearing Held Re: [445-1] Motion For Clarification and Correction Of Order Removing Plan Trustee by CKS Asset Management . Agreed Order presented and signed. (swm) [EOD 09/13/01] [90-1254]

127. 9/13/01 -- docket # 454  Agreed Corrected Order Granting in Part, Denying in Part [412-1] Motion for Removal of Trustee, For Disgorgement of Unreasonable Fees Taken Without Court Approval and for Damages to Estate for Breach of Fiduciary Duty and Misapplication of Funds by CKS Asset Management. Parties Notified. (swm) [EOD 09/13/01] [90-1254] *{Used as Exhibit 4(4e) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02 & as Exhibit CKS 25 to docket #467}*

128. 9/18/01 -- docket # 455  Application By Trustee D Michael Boudloche To Employ Michael B Schmidt as Attorney . to lg (swm) [EOD 09/18/01] [90-1254]

129. 9/20/01 -- docket # 456  Order Granting [455-1] Application To Employ Michael B Schmidt as Attorney by D Michael Boudloche . Parties Notified. (swm) [EOD 09/20/01][90-1254]

130. 1/29/02 -- docket # 457  Order Setting Deadlines on Final Fee Application of Colin K Kaufman - February 8, 2002 and Setting Hearing Thereon - February 22, 2002  9:00 in Corpus Christi . Parties Notified. (seh) [EOD 01/29/02] [90-1254]

131. 2/8/02 -- docket # 458  Final Application By Trustee Colin Kelly Kaufman For Compensation ( Fees: $ 427,291.50, Expenses: $ 23,634.61) and $2,300 for an appraiser Last

Dav to Object: 3/4/02 md 3/4 (seh) [EOD 02/12/02][90-1254] *[Used as Exhibit 3(3c) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02]*

**Exhibit List**

**Tab 1**

1a -- Accounting of James P. Moon of Aug. 22, 1997 (faxed and first class mail to Steve Ditto's attorney, Mr. Newsom).

1b -- Docket entry referring to Al White, CPA's employment

1c -- Motion to employ Al White as accountant for the bankruptcy estate with exhibits showing purpose of employment was to answer requests of Steve Ditto/CKS

1d -- Order approving employment of Al White as CPA for the bankruptcy estate

**Tab 2 — DOCUMENTS RE: RULINGS**

2a -- Ruling of Hon. George P. Kazen, Chief U.S. District Judge — dated December 6, 2001

2b -- Transcript of ruling of Hon. Richard S. Schmidt — dated June 28, 2001

2c -- Notice of filing of Colin K. Kaufman's Post-Hearing letter memorandum of issues presented — filed and delivered March 5, 2002 (15-pg. Letter setting out issues presented on fee application)

2d -- Memorandum opinion and order on Colin Kelly Kaufman's final fee application — entered March 7, 2002 (Brownsville Division) by Hon. Richard S. Schmidt

**Tab 3 — EXHIBITS (Judge took judicial notice of the entire file and all exhibits filed before).**

3a -- Exhibit list of February 22, 2002

3b -- Proffer of former plan trustee's testimony regarding benefits bestowed on the estate (shows over $2 million in benefits for items listed)

3c -- Colin Kelly Kaufman's final fee application for work done to date benefitting estate or on account of service as former plan trustee — filed on February 8, 2002

Exhibits to Item 3c (fee application to date):

| | |
|---|---|
| Exhibit A — | Modification to First Amended Plan of Reorganization of Charles B. Feldman d/b/a/ Charles B. Feldman Investments |
| Exhibit B — | Invoice for services rendered — dated February 6, 2002 |
| Exhibit C — | Expert Witness Data Sheet of Colin Kelly Kaufman |
| Exhibit D — | One Page Summary |
| Exhibit E — | Adversary cover sheet with Plan Trustee's Original Complaint (Includes a copy of the proposed final report without exhibits, and a summary of damages) |
| Exhibit F — | Feldman's Individual Income Tax Returns — for years of 1993 thru 1997 (Showing several hundred thousands of CD's and T-Bills) |
| Exhibit G — | Feldman Rentals Income Tax Returns — for years of 1993 thru 1997 (Proposed final report reveals money owed to the estate) |
| Exhibit H — | Feldman Real Estate, Inc., Income Tax Returns — for years of 1993 thru 1997 (Proposed final report reveals money owed to the estate) |
| Exhibit I — | Clara Feldman Properties Income Tax Returns — for years of 1993 thru 1997 (Proposed final report reveals money owed to the estate) |

3d -- Motion for extension of time to file objection to claims by James Moon on behalf of Charles Feldman, debtor — dated October 28, 1992 (asking for more time so that former plan trustee could participate in the review and evaluation of claims and potential objections) — exhibit admitted into evidence in the courtroom.

3e -- FAX from Frost Bank re: trust department, exhibit admitted into evidence in the courtroom (bank would have refused the trustee work based on ongoing litigation disclosing hourly fees charged for unusual responsibilities and attorneys fees charged for all legal work) (would have been another layer of administrative expenses)

## *Tab 4 — OBJECTIONS AND RESPONSES FOR THE COURT HEARING ON FEBRUARY 22, 2002*

4a -- Trustee's objection to Kaufman's final fee application as plan trustee — filed Feb. 15, 2002 by attorney Mike Schmidt for new plan trustee Mike Boudloche

4b -- Applicant's response to Mike Boudloche's objection to his fee application — filed Feb. 21, 2002 w/exhibits

4c -- CKS Asset Management, Inc.'s objection to "Colin Kelly Kaufman's final fee application for work done to date benefitting estate or on account of service as former plan trustee" — filed Feb. 15, 2002 w/exhibits

4d -- Applicant's response to CKS Asset Management, Inc.'s objection to his fee application — filed Feb. 21, 2002 w/exhibits

4e -- CKS Asset Management, Inc.'s exhibit list

## *Tab 5 — EXHIBIT M (the letter to Hon. Richard S. Schmidt of June 28, 2001 and the book of accountings he requested which made up part of the basis of his ruling of June 28, 2001, sent before)*

### List of Enclosures

A. Exhibits to 2nd Amendment to Plan Trustee's Proposed Final Report (docket #408):
  Feldman Estate Payments Corrected Summary
  Feldman Estate Deposit Summary (Frost IOLTA Account)
  Feldman Claims Register

B. Plan Trustee's Proposed Final Report (docket #383)

C. Plan Trustee's Seventh Report (COS says served "on the persons who appeared in court on this matter on September 18, 1997 - Plan Trustee and SKK gave copy to CKS Asset Mgmt. after court)

D. Plan Trustee's Response to CKS' Motion to Convert (docket #281)

E. Response of CKS Asset Management, Inc. to Plan Trustee's Motion to Extend Plan Term - May 29, 1997 (docket #278) - (CKS's Motion to Convert to Chapter 7)

F. Plan Trustee's Sixth Report and Partly Unopposed Motion to Extend Plan Term to January 31, 1998 (docket #275)

G. Plan Trustee's Fifth Report - April 16, 1997 (docket #272)

H. Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (4th Accounting) (handed out in court)

I. Plan Trustee's Record or Receipts and Expenditures in the Charles Feldman Bankruptcy (3rd Accounting) (handed out in court)

J. Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy

(2nd Accounting) (handed out in court)

K.    Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy
       (1st Accounting) (mailed out on September 20, 1995)

L.    Notice of Assignment of Claim (CKS Asset Mgmt. is substituted for FDIC) (S. Ditto m/d 04/29/95) (docket #223) -
       filed March 20, 1995

M.    Colin K. Kaufman's Original Response to Court's Order to Show Cause; and First Post-
       Confirmation Application for Leave to Pay Mr. Moon and Others Additional Sums - January 9, 1995 (docket #220)

N.    Plan Trustee's Notice of and Motion to Approve 1st Quarterly Distribution - December 21, 1992 (docket #197)

132.  2/15/02 -- docket # 459  Objection By Creditor CKS Asset Management To [458-1]
Application For Compensation ( Fees: $ 427,291.50, Expenses: $ 23,634.61) and $2,300 for an
appraiser by Colin Kelly Kaufman . to lg (seh) [EOD 02/19/02] [90-1254] *{Used as Exhibit
4(4c) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States
District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

133.  2/15/02 -- docket # 460  Objection By Trustee D Michael Boudloche To [458-1]
Application For Compensation ( Fees: $ 427,291.50, Expenses: $ 23,634.61) and $2,300 for an
appraiser by Colin Kelly Kaufman . to lg (seh) [EOD 02/19/02] [90-1254] *{Used as Exhibit 4(4a)
to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District
Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

134.  2/19/02-- Hearing Re: [458-1] Application For Compensation ( Fees: $ 427,291.50,
Expenses: $ 23,634.61) and $2,300 for an appraiser by Colin Kelly Kaufman scheduled for 9:00
2/22/02 at 1133 N Shoreline Corpus Christi (seh) [EOD 02/19/02] [90-1254]

135.  2/21/02 -- docket # 461  Response By Trustee Colin Kelly Kaufman To [460-1]
Objection by D Michael Boudloche To Application for Fees. (seh) [EOD 02/22/02] [90-1254]
*{Used as Exhibit 4(4b) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq.,
United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

136.  2/21/02 -- docket # 462  Response By Trustee Colin Kelly Kaufman To [459-1]
Objection by CKS Asset Management to Application for Fees. (seh) [EOD 02/22/02] [90-1254]
*{Used as Exhibit 4(4d) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq.,
United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

137.  2/21/02 -- docket # 463  Objection By Creditor Parkwell Investments Inc To
[458-1] Application For Compensation ( Fees: $ 427,291.50, Expenses: $ 23,634.61) and $2,300
for an appraiser by Colin Kelly Kaufman . (seh) [EOD 02/22/02] [90-1254]

138.  2/21/02 -- docket # 463  Support By Creditor Parkwell Investments Inc To [460-1]

41

Objection by D Michael Boudloche to Application For Fees. (seh) [EOD 02/22/02] [90-1254]

139. 2/21/02 -- docket # 464  Proffer of Trustee Colin Kelly Kaufman's Testimony Regarding Benefits Bestowed on the Estate (seh) [EOD 02/25/02] [90-1254] *{Used as Exhibit 3(3b) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

140. 2/22/02 -- docket # 465  Hearing Re: [458-1] Application For Compensation ( Fees: $ 427,291.50, Expenses: $ 23,634.61) and $2,300 for an appraiser by Colin Kelly Kaufman. Exhibits offered and admitted. Arguments presented. Witness (C K Kaufman) sworn and testimony presented. Witness (Michael Boudloche) sworn and testimony presented. Additional exhibits were discussed and admitted with stipulations on record. Pending issues on this case are in  settlement discussions. Court will be informed by 3/8/02 as to the results of those discussions, if not settled, then a trial will be set for 9:00 3/22/02 at 1133 N Shoreline Corpus Christi. Court will issue a written ruling in the matter heard this date. Under Advisement. (seh) [EOD 02/25/02] [90-1254]

141. 2/22/02 -- docket # 466  Trustee Colin Kelly Kaufman Exhibit List (seh) [EOD 02/26/02] [90-1254] *{Used as Exhibit 3(3a)to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

142. 2/22/02 -- docket # 467  Creditor CKS Asset Management Exhibit List (seh) [EOD 02/26/02] [90-1254] *{Used as Exhibit 4(4e)to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

143. 2/25/02-- Under Advisement [458-1] Application For Compensation ( Fees: $427,291.50, Expenses: $ 23,634.61) and $2,300 for an appraiser by Colin Kelly Kaufman . (seh) [EOD 02/25/02] [90-1254]

144. 3/5/02 -- docket # 468  Notice Re: Filing of Colin K Kaufman's Post-Hearing Letter Memorandum of Issues to be Presented. (seh) [EOD 03/06/02] [90-1254] *{Used as Exhibit 2(2c) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

145. 3/7/02 -- docket # 469  Memorandum Opinion and Order Granting [458-1] Application For Compensation ( Fees: $ 427,291.50, Expenses: $ 23,634.61) and $2,300 for an appraiser by Colin Kelly Kaufman. Payment to Colin K. Kaufman of $50,000.00 in fees and $13,759.61 in expenses . Parties Notified. (ec) [EOD 03/07/02] [90-1254] *{Used as Exhibit 2(2d) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02& exhibit to Notice of Appeal #471/#472}*

146. 3/12/02 -- docket # 470  Final Judgment For Trustee D Michael Boudloche Against Trustee Colin Kelly Kaufman On Final Fee Application of Colin Kelly Kaufman. Parties Notified. (seh) [EOD 03/12/02] [90-1254] *{Used as Exhibit 2(2d)to Hon. George P. Kazen. Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02 & exhibit to Notice of Appeal #471/#472}*

147. 03/15/02 — docket #471 notice of appeal.  Receipt number 958246, fee amount. Filed by Colin Kelly Kaufman (related document(s) 469). Appellant designation due by 03/25/2002. (Srus,)(Entered: 03/19/2002).

148. 03/15/02 — docket # 472 notice of appeal.  Receipt number 958246, fee amount. Filed by Colin Kelly Kaufman (related document(s) 470). Appellant designation due by 03/25/2002. (Srus,)(Entered: 03/19/2002).

149. 03/19/02 — docket # 473 notice of retention of BK record pursuant to Local Bankruptcy Rule 8007.  (srus,)(Entered: 03/19/02).

150. 03/19/01 — docket # 474 notice of retention of BK record pursuant to Local Bankruptcy Rule 8007.  (srus,) (Entered: 03/19/02).

151. 06/18/01 — adversary docket #1(01-2090) complaint (01-20-90) Colin Kelly Kaufman, vs. Charles B. Feldman.  NOS 454 Recover Money/Property. (Filing Fee $, r 150.00 Receipt # 952513) (jh) [EOD 06/21/01][01-2090] *{Used as Exhibit J to State Bar letter dated 08/31/01 & as Exhibit 3(3c)(E) to Hon. George P. Kazen, Esq. Chief U.S. District Judge & Hon. Keith P. Ellison, Esq., United States District Judge -- dated 03/08/02 & Richard Russell w/State Bar -- dated 03/12/02}*

152. 07/13/01  — Letter from Hon. Keith P. Ellison, U.S. District Judge re: letter to notify you that a complaint has been filed.

153. 12/06/01 — Letter ruling of Hon. George P. Kazen, Chief United States District Judge (in record as part of Docket #466).

154. Letters and Exhibits before Hon. George P. Kazen, Esq., Chief United States District Judge (originally sent to Hon. Keith P. Ellison, Esq., United States District Judge on August 13, 2001), showing what was before him when he ruled December 6, 2001.

**Exhibits are as follows:**

**Exhibit List**

A.    Plan Trustee's Proposed Final Report, with exhibits including Amended Plan, Disclosure Statement, Order Confirming Plan, docket of case, tax returns of some Feldman group entities showing debtor's defaults under the Plan, etc. (04/17/01)

**Exhibit List to Plan Trustee's Proposed Final Report**

| | | |
|---|---|---|
| 1. | Exhibit | (Filed) |
| 2. | Exhibit STFN | (Filed) |
| 3. | Exhibit SCHD | (Filed) |
| 4. | Exhibit INVS | (Filed) |
| 5. | Exhibit DCKT | (Filed) |
| 6. | Exhibit PLAN | (Filed) |
| 7. | Exhibit TAXR - (Includes 1992 - 1997) | (Filed) |
| | a. FREI | |
| | b. Feldman Rentals | |
| | c. Clara Feldman Properties | |
| 8. | Exhibit ALWH | (Filed & Mailed) |

B.     Notice of Corrected Exhibits to Plan Trustee's Proposed Final Report (04/17/01)

C.     CKS's "Response to Plan Trustee's Proposed Final Report and Motion of CKS Asset Management, Inc. to Compel Plan Trustee to Perform an Independent Accounting Preparatory to Filing a Final Report (04/20/01)

D.     CKS's Motion for Removal of Plan Trustee, for Disgorgement of Fees, and for Damages to Estate (04/29/01)

E.     Plan Trustee's Notice of His Response to "Response to Plan Trustee's Proposed Final Report and Motion of CKS Asset Management, Inc. to Compel Plan Trustee to Perform an Independent Accounting Preparatory to Filing a Final Report." (05/29/01)

F.     Plan Trustee's Second Amendment to His Proposed Final Report (05/29/01)

G.     Plan Trustee's Motion to Expedite Hearing on His Original Opposed Expedited Motion to Compel Production of Documents, Plan Trustee's Original Opposed Expedited Motion to Compel Production of Documents, and orders to both (06/05/01)

H.     Plan Trustee's Original Response to CKS's Motion for Removal of Plan Trustee, for Disgorgement of Fees, and for Damages to Estate (06/13/01)

I.     Plan Trustee's Original Opposed Expedited Motion to Cancel CKS's Claim, or Alternatively to Assign CKS's Claim or Set-Off Its Potential Dividend to Plan Trustee to Secure Fees (06/13/01)

J.     Plan Trustee's Original Complaint with Adversary Cover Sheet (06/18/01)

K.     Feldman's Personal Tax Returns

L.     Plan Trustee's Original Findings of Fact and Conclusions of Law Submitted on His Proposed Final Report and Its Amendments and on CKS Asset Management, Inc.'s Motion to Remove Plan Trustee (06/27/01)

M.     Letter of Enclosure (docket #441) of Over Seven Prior Accountings by Plan Trustee (with exhibits) (06/28/01)

**List of Enclosures**

A.     Exhibits to 2nd Amendment to Plan Trustee's Proposed Final Report (docket #408):
Feldman Estate Payments Corrected Summary
Feldman Estate Deposit Summary (Frost IOLTA Account)

Feldman Claims Register

B.    Plan Trustee's Proposed Final Report (docket #383)

C.    Plan Trustee's Seventh Report (COS says served "on the persons who appeared in court on this matter on September 18, 1997 - Plan Trustee and SKK gave copy to CKS Asset Mgmt. after court)

D.    Plan Trustee's Response to CKS' Motion to Convert (docket #281)

E.    Response of CKS Asset Management, Inc. to Plan Trustee's Motion to Extend Plan Term - May 29, 1997 (docket #278) - (CKS's Motion to Convert to Chapter 7)

F.    Plan Trustee's Sixth Report and Partly Unopposed Motion to Extend Plan Term to January 31, 1998 (docket #275)

G.    Plan Trustee's Fifth Report - April 16, 1997 (docket #272)

H.    Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (4th Accounting) (handed out in court)

I.    Plan Trustee's Record or Receipts and Expenditures in the Charles Feldman Bankruptcy (3rd Accounting) (handed out in court)

J.    Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (2nd Accounting) (handed out in court)

K.    Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (1st Accounting) (mailed out on September 20, 1995)

L.    Notice of Assignment of Claim (CKS Asset Mgmt. is substituted for FDIC) (S. Ditto m/d 04/29/95) (docket #223) - filed March 20, 1995

M.    Colin K. Kaufman's Original Response to Court's Order to Show Cause, and First Post-Confirmation Application for Leave to Pay Mr. Moon and Others Additional Sums - January 9, 1995 (docket #220)

N.    Plan Trustee's Notice of and Motion to Approve 1st Quarterly Distribution - December 21, 1992 (docket #197)

N.    Transcript of the Court's Ruling (06/28/01)

O.    Plan Trustee's Response to CKS's Motion for Reconsideration (07/23/01)

P.    Secs. 507(a) and 1129 of the Bankruptcy Code (11 U.S. Code), and legislative history to the latter

Q.    Expert Witness Data Sheet

      154.  03/08/02 — Letters to Hon. George P. Kazen, Chief U.S. District Judge & Hon. Keith P. Ellison, U.S. District Judge re: copy of Judge Schmidt's opinion and order; also enclosed are the writings which were before Judge Schmidt.

**Letter to Hon. George P. Kazen, Esq. — dated March 8, 2002 (enclosing exhibits updating his file, as per his ruling of December 6, 2001)**

**Exhibit List**

*Tab 1*

1a -- Accounting of James P. Moon of Aug. 22, 1997 (faxed and first class mail to Steve Ditto's attorney, Mr. Newsom).

1b -- Docket entry referring to Al White, CPA's employment

1c -- Motion to employ Al White as accountant for the bankruptcy estate with exhibits showing purpose of employment was to answer requests of Steve Ditto/CKS

1d -- Order approving employment of Al White as CPA for the bankruptcy estate

### Tab 2 — DOCUMENTS RE: RULINGS

2a -- Ruling of Hon. George P. Kazen, Chief U.S. District Judge — dated December 6, 2001

2b -- Transcript of ruling of Hon. Richard S. Schmidt — dated June 28, 2001

2c -- Notice of filing of Colin K. Kaufman's Post-Hearing letter memorandum of issues presented — filed and delivered March 5, 2002 (15-pg. Letter setting out issues presented on fee application)

2d -- Memorandum opinion and order on Colin Kelly Kaufman's final fee application — entered March 7, 2002 (Brownsville Division) by Hon. Richard S. Schmidt

### Tab 3 — EXHIBITS (Judge took judicial notice of the entire file and all exhibits filed before).

3a -- Exhibit list of February 22, 2002

3b -- Proffer of former plan trustee's testimony regarding benefits bestowed on the estate (shows over $2 million in benefits for items listed)

3c -- Colin Kelly Kaufman's final fee application for work done to date benefitting estate or on account of service as former plan trustee — filed on February 8, 2002

Exhibits to Item 3c (fee application to date):

Exhibit A — Modification to First Amended Plan of Reorganization of Charles B. Feldman d/b/a/ Charles B. Feldman Investments

Exhibit B — Invoice for services rendered — dated February 6, 2002

Exhibit C — Expert Witness Data Sheet of Colin Kelly Kaufman
Exhibit D — One Page Summary
Exhibit E — Adversary cover sheet with Plan Trustee's Original Complaint
(Includes a copy of the proposed final report without exhibits, and a summary of damages)
Exhibit F — Feldman's Individual Income Tax Returns — for years of 1993 thru 1997
(Showing several hundred thousands of CD's and T-Bills)
Exhibit G — Feldman Rentals Income Tax Returns — for years of 1993 thru 1997
(Proposed final report reveals money owed to the estate)
Exhibit H — Feldman Real Estate, Inc., Income Tax Returns — for years of 1993 thru 1997
(Proposed final report reveals money owed to the estate)
Exhibit I — Clara Feldman Properties Income Tax Returns — for years of 1993 thru 1997
(Proposed final report reveals money owed to the estate)

3d -- Motion for extension of time to file objection to claims by James Moon on behalf of Charles Feldman, debtor — dated October 28, 1992 (asking for more time so that former plan trustee could participate in the review and evaluation of claims and potential objections) — exhibit admitted into evidence in the courtroom.

3e -- FAX from Frost Bank re: trust department, exhibit admitted into evidence in the courtroom (bank would have refused the trustee work based on ongoing litigation disclosing hourly fees charged for unusual responsibilities and attorneys

fees charged for all legal work) (would have been another layer of administrative expenses)

### Tab 4 — OBJECTIONS AND RESPONSES FOR THE COURT HEARING ON FEBRUARY 22, 2002

4a --   Trustee's objection to Kaufman's final fee application as plan trustee — filed Feb. 15, 2002 by attorney Mike Schmidt for new plan trustee Mike Boudloche

4b --   Applicant's response to Mike Boudloche's objection to his fee application — filed Feb. 21, 2002 w/exhibits

4c --   CKS Asset Management, Inc.'s objection to "Colin Kelly Kaufman's final fee application for work done to date benefitting estate or on account of service as former plan trustee" — filed Feb. 15, 2002 w/exhibits

4d --   Applicant's response to CKS Asset Management, Inc.'s objection to his fee application — filed Feb. 21, 2002 w/exhibits

4e --   CKS Asset Management, Inc.'s exhibit list

### Tab 5 — EXHIBIT M (the letter to Hon. Richard S. Schmidt of June 28, 2001 and the book of accountings he requested which made up part of the basis of his ruling of June 28, 2001, sent before)

#### List of Enclosures

A.   Exhibits to 2ⁿᵈ Amendment to Plan Trustee's Proposed Final Report (docket #408):
     Feldman Estate Payments Corrected Summary
     Feldman Estate Deposit Summary (Frost IOLTA Account)
     Feldman Claims Register

B.   Plan Trustee's Proposed Final Report (docket #383)

C.   Plan Trustee's Seventh Report (COS says served "on the persons who appeared in court on this matter on September 18, 1997 - Plan Trustee and SKK gave copy to CKS Asset Mgmt. after court)

D.   Plan Trustee's Response to CKS' Motion to Convert (docket #281)

E.   Response of CKS Asset Management, Inc. to Plan Trustee's Motion to Extend Plan Term - May 29, 1997 (docket #278) - (CKS's Motion to Convert to Chapter 7)

F.   Plan Trustee's Sixth Report and Partly Unopposed Motion to Extend Plan Term to January 31, 1998 (docket #275)

G.   Plan Trustee's Fifth Report - April 16, 1997 (docket #272)

H.   Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (4ᵗʰ Accounting) (handed out in court)

I.   Plan Trustee's Record or Receipts and Expenditures in the Charles Feldman Bankruptcy (3ʳᵈ Accounting) (handed out in court)

J.   Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (2ⁿᵈ Accounting) (handed out in court)

K.   Plan Trustee's Record of Receipts and Expenditures in the Charles Feldman Bankruptcy (1ˢᵗ Accounting) (mailed out on September 20, 1995)

L.   Notice of Assignment of Claim (CKS Asset Mgmt. is substituted for FDIC) (S. Ditto m/d 04/29/95) (docket #223) - filed March 20, 1995

M.   Colin K. Kaufman's Original Response to Court's Order to Show Cause, and First Post-Confirmation Application for Leave to Pay Mr. Moon and Others Additional Sums - January 9, 1995 (docket #220)

47

N.    Plan Trustee's Notice of and Motion to Approve 1ᵗ Quarterly Distribution - December 21, 1992 (docket #197)

155.  03/15/02 — Letters to Hon. George P. Kazen, Chief U.S. District Judge and Hon. Keith P. Ellison, U.S. District Judge re: another "final judgment" w/ exhibits enclosed.

### EXHIBIT LIST

1. Final Judgment on final fee application of Colin Kelly Kaufman (docket #470 - entered 03/12/02)

2. Colin Kelly Kaufman's Original Notice of Appeal - filed on 03/15/02)

3. Memorandum Opinion and order on Colin Kelly Kaufman's final fee application (docket #469 — entered 03/07/02)

156.  06/22/01 — Transcript of hearing held on June 22, 2001.

157.  06/26/01 — Transcript of hearing held on June 26, 2001.

158.  06/27/01 — Transcript of hearing held on June 27, 2001.

159.  09/12/01 — Transcript of hearing held on September 12, 2001.

160.  02/22/02 — Transcript of hearing held on February 22, 2002.

161.

162.  01/07/02 - Civil Docket for Case #:02-CV-73 & 02-CV-74 (Docket D).

163.  04/12/02 - NOTICE of Assignment of Bankruptcy Appeal

164.  04/12/02 - DOCKET ENTRY BANKRUPTCY DESIGNATED RECORD on appeal

165.  04/12/02 - Order setting Initial Pretrial and Scheduling Conference on 1:45 08/26/02

166.  04/15/02 - Reset scheduling conference for 1:45 08/26/02

167.  04/25/02 - CERTIFICATE OF INTERESTED PARTIES by Mike Boudloche

168.  04/26/02 - Appellant's BRIEF by Colin Kelly Kaufman

169.  05/02/02 - DOCKET ENTRY  MAIL RETURNED UNDELIVERABLE

170.  05/07/02 - NOTICE OF filing of balance of his record on appeal less transcripts not yet delivered by Colin Kelly Kaufman

171.   05/08/02 - DOCKET ENTRY  Received from Bankruptcy Court 4 Boxes of Bankruptcy record on case B-02-73 and B-02-74.  Placed on shelf together with case.

172.   05/10/02 - Response Brief by Mike Boudloche

173.   05/20/02 - REPLY BRIEF On Appeal of Docket Numbers 469 & 470 by Colin Kelly Kaufman.

174.   06/05/02 - NOTICE of Filing of Transcripts as balance of his record on appeal by Colin Kelly Kaufman.

175.   06/06/02 - DOCKET ENTRY  Received second supplemental Records on appeal. Included is an updated docket sheet in Case No. 00-01254.  Placed on correspondence side of  B-02-73.

176.   07/23/02 - MOTION for continuance of Pretrial Conference until 09/10/02 by Mike Boudloche.

177.   07/29/02 - ORDER striking[9-1] motion for continuance of Pretrial Conference until 09/10/02.

178.   07/29/02 - RESPONSE by Colin Kelly Kaufman to [9-1] motion for continuance of  Pretrial Conference until 09/10/02.

179.   07/29/02 - MOTION FOR Court to take Judicial Notice by Colin Kelly Kaufman.

180.   07/31/02 - Amended MOTION for continuance of pretrial conference until September 10, 2002 by Mike Boudloche.

181.   08/01/02 - RESPONSE by Mike Boudloche to [12-1] motion for court to take Judicial Notice.

182.   08/06/02 - RESPONSE by Colin Kelly Kaufman to amended [13-1] motion for continuance of pretrial conference until September 10, 2002.

183.   08/14/02 - REPLY by Mike Boudloche to response to [13-1] motion for continuance of pretrial conference until September 10, 2002.

184.   08/16/02 - ORDER granting [13-1] motion for continuance of pretrial conference until September 10, 2002.

185.    08/19/02 - First Supplemental [15-1] response by Colin Kelly Kaufman to amended motion for continuance.

186.    09/10/02 - DOCKET ENTRY  Minute Entry: Initial Pretrial Conference held b/Judge Tagle. App: Colin Kaufman f/pltf Kaufman; Michaeld Schmidt f/dft CKS. The Court ordered consolidating cases B-02-73 and with B-02-74. All future filings will be in B-02-73 Ct Reporter: Breck Record Law Clerk Henri Nicolas. The Court asked Mr. Kaufman if he would like to postpone hearing until he can seek seek advice of counsel. Mr. Kaufman stated he would prefer to have hearing today so that issues be resolved f/the Texas State Bar hold hearing on disciplinary matters. Parties argued the matters on appeal from the U.S. Bktcy Court for the Southern D. of TX. Court advised parties that a memorandum of opinion and ruling will be forthcoming.

187.    09/10/02 - DOCKET ENTRY  Consolidated Lead Case.

188.    12/16/02 - MOTION for the Court to prevent Mooting of the Appeal by Colin Kelly Kaufman.

189.    12/20/02 - RESPONSE by Mike Boudloche to [20-1] motion for the Court to prevent Mooting of the Appeal.

190.    12/20/02 - MOTION to dismiss by Mike Boudloche.

191.    12/27/02 - ORDER.

192.    12/27/02 - DOCKET ENTRY  Case Closed.

193.    01/03/03 - RESPONSE BY Colin Kelly Kaufman to [22-1] motion to dismiss.

194.    01/06/03 - NOTICE OF APPEAL of [23-1] order by Colin Kelly Kaufman.

Respectfully Submitted,

Colin Kelly Kaufman, In propria personam
State Bar of Texas # 11113000
So. Dist. Federal ID # 9242

Colin Kelly Kaufman, Attorney at Law
1106 Third St. 78404-2312
P. O. Box 1662
Corpus Christi, TX. 78403-1662
Telephone (361) 888-8865

Telecopier (361) 888-8172

### Certificate of Service

I certify I had one of the personnel at this law office serve the foregoing writing on the persons shown on the list below, by U.S. mail, first class postage prepaid, this 16th day of January, 2003.

_Colin Kelly Kaufman_

Colin Kelly Kaufman

### Appeals Service List

1. Matthew A. Rosenstein, Esq.
   American Bank Plaza #420
   711 No. Carancahua
   Corpus Christi, TX. 78475

   Telephone (361) 883-5577
   Telecopier (361) 883-5590

2. Richard Grant, Esq.,
   3102 Oak Lawn #700
   Dallas, TX. 75219

   Telephone (214) 777-5081
   Telecopier (214) 777-5082

3. Ron Simank, Esq.,
   Schauer & Simank, Attys.
   615 N. Upper Broadway #2000
   Corpus Christi, TX. 78476

   Telephone (361) 884-2800
   Telecopier (361) 884-2822

4. Mike Schmidt, Esq.
   712 American Bank Plaza
   711 No. Carancahua
   Corpus Christi, TX. 78475

   Telephone (361) 884-9949
   Telecopier (361) 884-6000

5. James P. Moon, Esq.
   1660 N. Hampton Rd., Ste. 202,
   DeSoto, TX. 75115

6. Colin Kelly Kaufman, Attorney at Law
   1106 Third St. 78404-2312
   P. O. Box 1662
   Corpus Christi, TX. 78403-1662

   Telephone (361) 888-8865
   Telecopier (361) 888-8172